108 So.2d 528

**CITY OF ALEXANDRIA**

v.

**R. J. JONES et al.**

No. 43838.

Jan. 12, 1959.

Rehearing Denied Feb. 16, 1959.

J. B. Nachman, Alexandria, for defendants-appellants.

Frank H. Peterman, Alexandria, for plaintiff-appellee.

PONDER, Justice.

In this suit the appellants appeal from a judgment awarding them the amount of $28,960 for the taking of their property by the City of Alexandria, contending that the trial court committed error in not considering the value of the buildings and improvements on the property in determining the value of the property for the purpose of severance damages. Appellants ask for an increase in the award to the amount of either $86,331.86, following computation of appellee's experts, or $94,416.05 following the computation of appellants' experts. The appellee has not answered the appeal.

The facts, contentions and determination of the issues have been most ably stated by the trial judge in this case and we herewith adopt the opinion as our own:

"In this suit the City of Alexandria seeks to expropriate certain property belonging to the defendants and which is an irregular shaped, five sided piece of land, having a front of 233.9 line common to Monroe and Rapides Streets, thence 66.03 feet along Eleventh Street, thence across the property in a westerly direction a distance of 251.64 feet to a point on an alley on the west side of the property, and from that point 23.25 feet to the point of beginning on Monroe Street, being identified as Parcel Number Five (5) on the plan of the City submitted in evidence and containing an area of 13,063 square feet. The purpose of the expropriation is to acquire property needed in building the Monroe Street underpass.

"This property is part of certain lots owned by the defendants and fronting on the streets as heretofore stated. To the rear of the expropriated property remains the balance of these lots, plus other lots fronting on Eleventh Street and on which latter property is situated the buildings and improvements owned by the defendants and from which they conduct their business

as retail dealers in lumber, hardware and other building materials.

"The expropriated property, as well as the balance of the lots from which it is taken, appears to be presently used by the defendants as open storage area for certain items of merchandise, employees' parking, and as a customer turn-around area. In this matter the City before filing the expropriation suit offered the defendants the sum of Twenty Three Thousand Five Hundred Dollars ($23,500.00) as damages in connection with this expropriation. That amount has been carried over into the present suit and is alleged to be the amount of the award which should be properly fixed herein.

"On the trial it appeared that the figure twenty three thousand five hundred dollars was arrived at, as explained by Mr. Gehr, by what is termed the before and after method of computing damages, and considering only the land and not the buildings or improvements on the property.

"The defendants in their pleadings take the position that egress and ingress to their property will be cut off, by the taking, from the main thoroughfares of Rapides Avenue and Monroe Street, and that the value of their property as a commercial center will be completely destroyed. The pleadings further set up that the combined frontage on Monroe and Rapides Streets has a before taking value of $200.00 per front foot, or $1.52 a square foot, for the ap-proximate 34,000 square feet involved in the entire lots from which the expropriated property is taken, and having a total value of $52,040.00; that the remaining property fronting 120 feet on Wheelock or Eleventh Street has a before taking value of $100 per front foot, or 81¢ per square foot, for the 14,700 square feet involved, for a total of $12,000, and that the replacement value of the buildings and improvements on the property is the sum of $106,031.70, or a total of before taking value of all the land and improvements of $170,071.70. It is further alleged that the land left after taking will be worth not in excess of $35 per running foot, for a total of $6,-449.19, or for a difference of $57,590.81 which is said to be the loss in land value. The total loss of land and improvement value alleged results in the claim of $110,-606.60 as damages to be awarded in this case. It is also pointed out in the answer that the expropriated area contains an area of 13,063.33 square feet, which is worth $1.52 per square foot, for a total valuation of $19,856.26.

"Mr. Gehr, the apparently leading expert who valued the property for the plaintiff and testified on the trial of this case, stated that the before taking value of the real estate was the sum of $30,605, arrived at by giving to the 260 foot frontage of the property the value of $95 per front foot and $50 for the frontage on Wheelock. That the value of the remaining land after

the taking will be the sum of $7,250, which subtracted from the total value leaves the sum of $23,355, which he rounded out at $23,500, as explanation of the figure set forth in the plaintiff's suit. He broke the matter down so as to show a separation of the land value and damages, and fixed the expropriated land value at $9,230, arrived by giving a value of 71¢ per square foot for the property. Deducting that from the figure $23,500, then he had left the figure $14,270, as severance damage, and thereby the figure of $23,500.00 is determined.

"The other experts for the City, Mr. Chambers and Mr. Webb, were generally in accord, and all of them made the very strong point that the buildings and improvements on the properties were not considered in their computations because the taking of the property sought to be expropriated has no effect on the value of the property as a whole.

"The defendants contend that the taking will result in complete destruction of their property as a retail center and that they will have left only 159 feet on a secondary street with a side entrance; that it will be difficult not only for vehicles but pedestrians to reach their property. Their position as stated in brief of their counsel is simply that the buildings and improvements can no longer be used for the purpose for which they were constructed and they sustain damages to the same extent as the land.

"Mr. Gremillion, to give one example of an expert witness presented by the defendants, fixes the replacement value of the buildings and improvements on the defendants' property in the sum of $118,-860.00.

"Mr. Sterkx, another expert, placed a valuation of $175 per front foot on the property expropriated, and arrived at the value of the lots fronting on Monroe and Rapides Streets as being $45,535.50, which figures $1.33 per square foot. He determined that the property fronting on Wheelock has a value of $100 per front foot, or a value of $12,000.00, the total of all land value being $57,535.50, and that the property remaining on Wheelock would have a value of $100 after the taking for a total of $15,950.00 and that the irregular shaped piece of land left between the property expropriated and the buildings and improvements on the Jones property, would have a value of $3,433.59 for a total of $19,383.59. This subtracted from the total land value left a difference of $38,-151.91 as loss in land value. He felt that the buildings and improvements would depreciate 50 per cent as a result of the taking and gave a figure which combined with the figure given for the land damage amounted to the sum of $88,151.91 which he fixed as the total amount of damages to be sustained by the defendants in this case. His view of the matter was that the resulting damage, as he saw it, was one

of prospective loss of business because of annoyance and inconvenience in reaching the property and also in hampering future expansion on the property. To use his own words, 'it was like taking the cream off of the milk'.

"Mr. Mansour [Mr. Monsour], a realtor, expressed his views about the matter by saying that the effect of this taking would be changing the retail location to a warehouse location because of the loss of access to the public to the Jones property, and then went on to say that the Jones firm needs more land than it has now, a consideration he apparently had in mind in arriving at his estimate of loss. In any event, he stated that the before taking value of the property was $150.00 a front foot for the lots fronting on Monroe and Rapides, for a total of $39,030.00, and $100 a front foot for the Eleventh or Wheelock Street property, totalling $12,000.00, or a grant total for the land of $51,030.00, which would figure $1.14 per square foot on the Monroe Street property, and 81¢ on the Wheelock or Eleventh Street property. It was his opinion, for the reasons already given, that there would be a forty per cent diminution in value of the buildings and improvements after the taking, and that the remainder of the Monroe Street lots would have twenty per cent of their present value and the Wheelock Street lots would have forty percent of the present value. He arrived at the figure of $80,836.68 as the total damages to be sustained.

"Mr. Wells, another expert, valued the Monroe and Rapides property at $200 per front foot and that on Wheelock at $100. It was also his opinion that the property after the expropriation would no longer have any retail use and would have to be diverted to some other use. His opinion was that the Wheelock property was diminished in value to $35.00 per front foot, and that there would be a fifty to sixty percent depreciation in value of the buildings and improvements on this property.

"Mr. R. J. Jones, Sr. of the Jones firm gave a figure of $170,071.71 as the present value of all of the land and improvements, using the figure of $200 per front foot for the Monroe and Rapides property and $100 per front foot for the Wheelock property. His estimate was that the buildings would be depreciated in value 50 per cent by the taking and that the remaining land would be worth only $6449.19, or a total deduction of $59,424.34, leaving the loss claimed at $110,606.66.

"In the brief filed by defendants' counsel complaint is made that the experts, while admitting a severance damage, did not consider the value of the improvements upon the property, although they can no longer be used for their intended purposes, and that, for the purpose of fixing damages,

the value of defendants' business should be considered.

"The plaintiff takes the position that the gross earnings or value of the business are immaterial because the asserted prospective loss of business is based on speculation and conjecture and such damages are not recoverable in any event. In addition it is said that the property has not been cut off to access from Rapides and Monroe Streets.

■■■■ "The general law involved in this case is simply that the owner is entitled to the market value at the time of the expropriation and market value is what a willing purchaser will pay a willing seller under ordinary circumstances. He is also entitled to resulting or severance damage to the remaining property when only part is taken and damage results thereby to the remainder. In the latter case the measure of compensation is the diminution in the value of the remaining properties for sale or rental, determined by arriving at value immediately before and after the expropriation. The consequential damage must not be anticipated damage, or too remote and speculative. And mere consequential injuries to the owner arriving from discomfort, disturbance, injury to business and the like are not recoverable. The damages claimed must be shown to a reasonable certainty.

■■ "Recent sales of comparable properties are the best criteria of values in expropriation proceedings, and if there are no comparable sales, ascertainment of true value is sought by consideration of other factors under the circumstances, such as rental income and value of the business being conducted upon the expropriated property, although these factors are not the absolute measures thereof.

"As the situation now exists the Jones buildings face on Eleventh or Wheelock Street which runs in a north-south direction on the west side of and parallel to the adjacent Texas and Pacific Railway right-of-way. Monroe Street and Rapides Avenue are cross-town thoroughfares, the former beginning near Red River and running westerly. A short distance west of the railroad right-of-way Monroe Street forms a junction with Rapides Avenue which runs off to the right. This point of junction occurs on the northeast corner of the Jones property, and Monroe Street continues on in front of and adjoining this property. The land sought to be expropriated encompasses the entire frontage on Monroe Street and Rapides Avenue and is a part of the vacant property lying between those streets and the buildings from which the defendants conduct their business. Bounding this land on the east is Eleventh Street and on the West is an alley running from Monroe Street to Madison Street.

At present, access to the Jones business is had by approach by means of either Eleventh Street or the alley. This access exists from Monroe Street and Rapides Avenue to the north of the property, and from Madison and other streets and alleys to the south.

"After the underpass is constructed, Monroe Street, now a two-way street, will be one-way going east. A turn-out will be constructed and which will enter into Eleventh Street. Another turn-out will be constructed which will run into the alley on the west side of the Jones property. No changes will be made in regard to the present access routes to the property from the south, except that traffic on Eleventh Street will not be permitted to continue on into the turn-out on that street as it will be one-way, coming off of Monroe Street to either turn around or leave Eleventh Street on the continuation of the turn-out. However, the Jones buildings will be reached before the motorist comes to the opposing one-way traffic.·

"Additionally, it will be more inconvenient for vehicular traffic on Rapides Avenue to reach the Jones buildings as the present access through Eleventh Street will be discontinued, and it will be necessary to go to Twelfth Street and reach Madison Street.

"From these facts, the conclusion is reached that construction of the underpass will not result in cutting off access to the Jones property from Monroe Street and Rapides Avenue so as to destroy its use as a retail center.

"Here it is appropriate to note that the buildings from which the business is conducted do not front on the thorough-fares of Monroe Street and Rapides Avenue. Instead they front on a secondary street which with certain alleys provide access to the business. This factual situation distinguishes this case from that of Smith v. City of New Orleans, 230 La. 282, 88 So. 2d 221. Here the case is not one where the property has value because the business fronts on a principal artery of traffic which is to be cut off by the public improvement. Instead, the principal business activity is on a secondary street which will still be accessible although the accessibility will to some extent become less direct and more inconvenient. While experience may prove that the value of the property has been decreased because of lessened or more difficult accessibility, it can not be said that its use as a retail center has been destroyed.

"This conclusion leaves for determination the amount of the award to be made for the property actually expropriated. As already stated it is vacant land used for outside storage, employee parking and a customer turn-around area.

"Plaintiff's expert Mr. Gehr fixed the value at $95 per front foot, or .71¢ per square foot. Defendants' experts had a range in valuation from $150 to $200 per

front foot. One of them, Mr. Monsour, fixed the value at $150, or $1.14 per square foot, and referred to two sales in the area which he considered comparable. One of these, the Snow purchase, figures $2.18 per square foot, and the other, the Antoon purchase, figures $1.81 per square foot.

"In two companion cases involving property expropriated for the Monroe underpass, and entitled City of Alexandria vs. Ducote and City of Alexandria vs. Warshauer Weil Company, Inc., decided prior to this suit and in which appeals have not been taken, the expropriated property was valued by the court at $150 per front foot. This valuation was arrived at by consideration of several sales of property in the immediate vicinity of the Jones land, including the Snow and Antoon sales.

"The Ducote property fronts on Monroe Street and lies between the railroad right-of-way and Eleventh Street and, therefore, is across the street from the Jones property. The Warshauer Weil land abuts the railroad right-of-way and is also across the street from the Jones property. This court is of the opinion that the Jones property is worth as much as these other properties, or $150 per front foot, which, incidentally, is the value placed upon it by the expert of defendants, Mr. Monsour, who gave the lowest estimate on their side on the case.

"In translating this front foot value into square foot price, in order to make the necessary computation herein, the court uses the figure $1.13 as suggested in the memorandum of defendants' counsel, rather than the $1.14 calculated by Mr. Monsour. Applying this price to the area of 13,063 square feet the compensation for the expropriated property is determined to be $14,690.

"Inasmuch as the entire frontage along two principal thoroughfares is being taken, it necessarily follows that severance damage will result to the balance of the property remaining. This court is of the opinion that the record does not satisfactorily reveal the basis for determining this damage. However, the plaintiff admits through its pleadings and testimony of its witnesses that at least the sum of $14,270 is due. Adding this amount to the figure of $14,690 we obtain the total of $28,960, the amount to be awarded to defendants as compensation for the taking of their property."

For the reasons assigned, the judgment is affirmed at appellants' cost.