131 So.2d 398 (1961)
CENTRAL LOUISIANA ELECTRIC CO., Inc.
v.
Jack F. HARANG.
No. 5226.
Court of Appeal of Louisiana, First Circuit.
May 22, 1961.
Rehearing Denied June 30, 1961.
*399 Jack J. Cousin, New Iberia, J. Monroe Simmons, Covington, Chaffe, McCall, Phillips, Burke & Hopkins, New Orleans, for appellant.
Dalton J. Barranger, Covington, for appellee.
Before ELLIS, LOTTINGER, JONES, HERGET and LANDRY, JJ.
LANDRY, Judge.
The instant matter being one of the causes consolidated with Central Louisiana Electric Co., Inc. v. Covington & St. Tammany Land & Improvement Co., 131 So.2d 369, all issues raised by defendant herein, excepting defendant's claim for compensation both for property taken and severance damages to remaining property, have therein been resolved adversely to defendant for reasons which will not be herein reiterated.
In the court below judgment was rendered in favor of plaintiff granting the servitude requested and awarding defendant *400 damages in the sum of $4,300 for the value of the land expropriated and severance damages in the amount of $5,900 to remaining property of defendant diminished in value by the taking. Plaintiff herein has appealed contending that the amount awarded by the trial court for property taken should be reduced and severance damages disallowed in toto. Defendant has answered the appeal urging affirmation of the awards made by the lower court.
The servitude sought to be acquired from defendant Harang consists of 8.32 acres to be taken from a 160-acre tract part of which is wooded but which is largely comprised of open land presently devoted only to cattle grazing but formerly employed both for grazing and rice farming. The property is situated 2½ miles from Covington, 3½ miles from Madisonville and approximately 10½ miles from the North Plaza of the Lake Pontchartrain Causeway. The tract is bounded on its entire southern boundary by a gravel road colloquially referred to as "Bootlegger Road". The Covington-Madisonville Highway, known as Turnpike Road, a blacktopped highway, traverses the property in a north-easterly-southwesterly course entering the land approximately 1,576 feet north of the southwest corner and exiting therefrom at the intersection of said Turnpike Road and Bootlegger Road some 550 feet east of the southwest corner of the property, thus placing the southwest corner of defendant's land in a triangle bounded by Turnpike Road, Bootlegger Road and the western limits of the tract. The centerline of the 125-foot servitude commences at the western boundary of the land 576 feet north of the tract's southwest corner, continues northeasterly crossing the land near its geographical center and finally intersects the eastern boundary thereof approximately 800 feet south of its northeast corner. Within the right of way will be constructed three towers, the first near the southwest corner within the triangle formed by Turnpike Road and Bootlegger Road, the second in the approximate center of the tract, and the third near the eastern boundary thereof. On the property is situated defendant's residence with accompanying outbuildings, a three-acre artificial pond or lake constructed by defendant and an airstrip.
When the instant suit was filed the property was being used principally for cattle grazing although the record shows defendant had made three rice crops thereon in former years during which operations he had utilized from 40 to 80 acres of the land. For two seasons next preceding trial he planted no rice and received a government allotment for desisting in said farming operation. It further appears the property contains numerous wells used by defendant for irrigation purposes.
It is undisputed defendant must abandon the airstrip formerly used by planes engaged in fertilizing and planting his rice crops. Although it appears that if defendant may not hereafter use planes in his rice farming his operating costs will be somewhat increased, it does not appear with any degree of certainty whether or not the airstrip may be relocated elsewhere on the land. Undoubtedly the presence of the wires will render future use of planes somewhat more hazardous but it is not shown it will render their use impossible. The distance separating defendant's residence from the line is a matter in dispute. Defendant testified the line is approximately 300 feet from his residence whereas the testimony of plaintiff's witnesses is to the effect the home is at least 400 feet from the right of way which would place the house at least 462½ feet from the centerline of the servitude. All parties agree the wires will overhang defendant's lake or pond. The record discloses neither the length nor character of construction of the airstrip from which we feel safe in assuming it to be merely a graded and maintained dirt runway.
Edward Deano and Robert Baldwin, appraisers (whose qualifications have been set forth and discussed at length in the companion case of Louisiana Central Electric *401 Co., Inc. v. Covington & St. Tammany Land & Improvement Co., 131 So.2d 369), were called as experts on behalf of plaintiff to appraise defendant's property.
Deano considered the property suitable only for cattle grazing and was of the opinion the land had no reasonably immediate potential value as residential subdivision property.
Baldwin considered the land suitable for pasture only.
The trial court, however, accepted the valuations of defendant's appraisers (who based their estimates largely upon the assumption the highest and best use of defendant's property was for subdivision purposes and the property could be subdivided into small homesites or residential building plots) and awarded damages in the amounts stated by defendant's witnesses to be the value of the land taken and the sum due in severance damages.
It is the settled jurisprudence of this state that the valuation to be placed on expropriated land is its market value at the time of taking and that market value is the fair value as between a willing purchaser and a willing seller under ordinary and usual circumstances. Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914; Texas Pipe Line Co. v. Barbe, 229 La. 191, 85 So.2d 260.
Market value of property expropriated for public use must be determined in the light of the best and highest use to which the property may reasonably be put but to constitute best and highest use for residential subdivision purposes in determining market value, it must be made to appear that there is reasonable expectation the property may be so used or developed in the not too distant future. Plaquemines Parish School Board v. Miller, 222 La. 584, 63 So.2d 6.
It is common knowledge that any tract of land wheresoever situated may be physically divided into residential plots or lots and subdivided irrespective of the demand for such property. However, potential subdivision use, to serve as the basis for establishing market value in an expropriation proceeding, must be shown to be reasonably prospective, as distinguished from remotely prospective, so as to remove said potential use or classification from the realm of guesswork, speculation and conjecture. If such potential future use is shown within the reasonably near future the owner is entitled to compensation on the basis of best and highest use for subdivision purposes even though the property affected be not in use for such purpose at the time of taking. However, if the potential (as, indeed, there is a potential in every case no matter how remote) is so indefinite or remote as to be predicated solely upon speculation and conjecture, it may not serve as the criteria of market value.
Thus it has been held in Plaquemines Parish School Board v. Miller, supra, that while the fact that a piece of property may at some time become valuable for residential subdivision purposes may be taken into consideration in determining its market value in expropriation proceedings, to classify its best and highest use as subdivision purposes, it should be made to appear that there is logical expectation it may be so developed in the reasonably near future. It was therein further held that the mere possibility of future subdivision use is too speculative.
In expropriation proceedings, the landowner, in addition to compensation for the property or servitude taken, is entitled to compensation for damage to contiguous land, not taken, caused by the use to which the property taken has been put. Texas Pipe Line Co. v. Barbe, 229 La. 191, 85 So.2d 260; Louisiana Highway Commission v. Boudreaux, 19 La.App. 98, 139 So. 521. Damages to property not taken were formerly referred to as "consequential damages". Louisiana Highway Commission v. *402 Treadaway, La.App., 173 So. 209, but more recently as "severance damages", Tennessee Gas Transmission Co. v. Primeaux, La. App., 100 So.2d 917; Texas Pipe Line Co. v. Barbe, supra.
It has been held that consequential injuries to the owner resulting from discomfort, inconvenience or loss of business are damnum absque injuria and not compensable, American Tel. & Tel. Co. of Louisiana v. Maguire, 219 La. 740, 54 So.2d 4; Louisiana Highway Commission v. Boudreaux, supra; State v. Sauls, 234 La. 241, 99 So. 2d 97, unless such inconvenience caused the landowner diminishes the market value of the land not taken. Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1; Opelousas, Gulf & N. E. Ry. Co. v. St. Landry Cotton Oil Co., 121 La. 796, 46 So. 810.
Where such consequential damages result from aesthetic considerations, the owner cannot be compensated therefor, Louisiana Highway Commission v. Boudreaux, supra, unless it is shown that there has been a diminution of the value of the property which remains after taking. City of New Orleans v. Giraud, 238 La. 278, 115 So.2d 349; East Baton Rouge Parish Council v. Koller, La.App., 94 So.2d 505.
Among consequential damages for which a landowner may not be compensated are those resulting from the mental worry caused the landowner by the construction through his property of the facility for which the property or servitude was taken, Nagle v. Police Jury of Caddo Parish, 175 La. 704, 144 So. 425, and those damages which are anticipated, remote and speculative, Texas Pipe Line Co. v. Barbe, supra; City of Alexandria v. Jones, 236 La. 612, 108 So.2d 528.
As held in Texas Pipe Line Co. v. Barbe, supra, the severance damages allowed are measured by the difference between the market value of the property for sale or rental purposes immediately before and immediately after expropriation. See also American Tel. & Tel. Co. of Louisiana v. Maguire, supra.
Severance damages may be based upon the percentage of depreciation to the remaining property caused by the dangerous condition presented by placing the utility on the property. Tennessee Gas Transmission Co. v. Primeaux, supra. Even where no real danger exists, compensation may be made for the mere fear of danger to the extent that such psychological effect of deterring prospective purchasers reduces its market value. Texas Pipe Line Co. v. National Gasoline Co. of Louisiana, Inc., 203 La. 787, 14 So.2d 636; Texas Pipe Line Co. v. Barbe, supra.
In support of his conclusions, Mr. Deano pointed out that defendant's property is situated between Madisonville and Covington and there is no development in the immediate vicinity thereof. He acknowledged an attempt to develop a tract of land into residential homesites approximately one or two miles removed from the Causeway Highway and approximately three miles from defendant's property. The subdivision referred to is known as Three-Rivers Estates wherein lots measuring 50 × 125 feet, advertised for sale for the price of $189, have been sold on terms of 10% down with the balance payable within seven or eight years. Although some lots have been sold in said subdivision it appears there has been no building or construction thereon. Predicated on the foregoing, Deano concluded the highest and best use of defendant's property was for cattle grazing, that it had no immediate, prospective potential for residential subdivision development and that valuation of said property for subdivision purposes would be speculative. He valued the property at $150 per acre or $1,200 for the land actually taken.
Mr. Baldwin testified he did not enter the property but viewed it from adjoining land. As in the case of Deano, Baldwin was unaware the property contained an airstrip or had been used for rice farming. He valued *403 the property at $200 per acre or $1,600 for the servitude. Like Deano he pointed out the property is situated in an area in which no development has occurred and he did not consider that it had any present or reasonably prospective potential for residential subdivision purposes.
Defendant produced as appraisers Randy Powell and Frank Patecek (whose qualifications have been set forth in detail in the case of Central Louisiana Electric Co., Inc. v. Covington & St. Tammany Land & Improvement Co., 131 So.2d 369, with which the present matter has been consolidated). Both Powell and Patecek valued that portion of the servitude situated on the southwest side of Turnpike Road (the blacktopped highway) at $10 per front foot measured along the highway or $1,250 for the 125-foot strip. A similar valuation of $1,250 was placed on the 125 foot of servitude fronting on the opposite or northeast side of the highway to a depth of 400 feet. The remaining portion of the servitude (6 acres) they valued at $300 per acre or $1,800, making a total valuation of the servitude of $4,300. Although the testimony of Powell and Patecek refers to the Three-Rivers Estates development and infers defendant's property may have some present value for subdivision purposes, their testimony in this regard lacks substantial support. They admit there has been no building development in Three-Rivers Estates Subdivision and recognize that defendant's property is in a rural area with no houses within one-half mile thereof. They concluded that the presence of the transmission line would depreciate the value of defendant's remaining property on each side of the servitude for a distance of 300 feet from the center line of the right of way thus involving 237½ feet on both the north and south sides of the servitude limits. They believed the depreciation therefrom would extend to that portion of the servitude lying within the triangle formed by Turnpike Road as well as that portion thereof on the east side of said highway to a distance or depth of 400 feet. To this portion of defendant's property, Powell and Patecek assigned severance damages of $5 per foot or a total of $4,700. For the remainder of defendant's property, a distance of 2,150 feet by a total width of 475 feet (considering each side of the right of way) equalling 23 acres, they estimated the damages thereto at $50 per acre or a total of $1,150, aggregating severance damages amounting to $5,900.
The trial court accepted the evaluations of defendant's witnesses and rendered judgment in favor of defendant in the sum of $4,300 for the servitude and $5,900 as severance damages to defendant's remaining property. The trial court found as a fact that the valuations fixed on the servitude by plaintiff's experts were too low and in this conclusion we are inclined to agree.
It has been repeatedly held by the appellate courts of this state that the best criteria of market value is recent sales of similar property in the vicinity of the property expropriated which transactions are commonly referred to as "comparables". State Through Department of Highways v. Hebert, 227 La. 111, 78 So.2d 528; Louisiana Power & Light Co. v. Simmons, 229 La. 165, 85 So.2d 251; Recreation and Park Commission of East Baton Rouge Parish v. Perkins, 231 La. 869, 93 So.2d 198.
It is likewise well established that in the absence of comparables, the court must look to other evidence to determine fair market value. Rapides Parish School Board v. Nassif, 232 La. 318, 94 So.2d 40; City of Alexandria v. Jones, 236 La. 612, 108 So.2d 528.
There appears in the record of this case no sales of comparables which could be deemed controlling or decisive of the question of fair market value of defendant's property. The evidence shows defendant's farm was well developed and maintained. However, there is no evidence of record upon which we could reasonably conclude the highest and best use of defendant's property was for subdivision development. The land is situated in a rural area and although *404 any tract of land is capable of being physically divided into lots or building sites and, in such respect, potentially suitable for subdivision purposes, there is nothing in the record of this case to indicate such potential is reasonably prospective or that it is marketable or may be employed for such purpose in the near future. Moreover, there is nothing to indicate that defendant planned or intended subdividing his property.
We believe the unit price of $300 per acre placed upon the property by defendant's witnesses represents the true value thereof. Said amount will be awarded in compensation for the servitude to be acquired by plaintiff resulting in an award to defendant, for the 8.32 acres taken, in the sum of $2,496. We find nothing in the record to support or justify the conclusion of defendant's witnesses Powell and Patecek that the highway frontage should be separately evaluated at $10 per foot. The property is basically farm land situated in a rural area and while any highway frontage may have remote commercial potential, it appears in the case at bar that there is no development reasonably near defendant's property or that the highway frontage in question could be sold for commercial purposes in the reasonably near future. The fact that it might at some indefinite future time be so disposed of is too remote and speculative to serve as a basis of compensation for the taking thereof.
Defendant's claim for severance damages, except for the loss of his airstrip, must be denied. Assuming, solely for argument's sake, the best and highest use of defendant's remaining property to be for residential subdivision purposes no severance damages thereto has been shown to the certainty required by law for recovery thereof. For the reasons set forth in the companion case of Central Louisiana Electric Co., Inc. v. Covington & St. Tammany Land & Improvement Co., 131 So.2d 369, all claims for severance damages in these consolidated cases are without foundation insofar as they may be predicated on alleged depreciation of remaining residential homesites adjacent to the servitude resulting from reputed fear of danger and interference with radio and television reception. Defendant's claim to severance damages is likewise without merit insofar as it is predicated upon personal inconvenience resulting from interference emanating from the line in question. Inconvenience experienced by an owner as a result of the taking is damnum absque injuria and not compensable. American Tel. & Tel. Co. of Louisiana v. Maguire, 219 La. 740, 54 So. 2d 4; Louisiana Highway Commission v. Boudreaux, 19 La.App. 98, 139 So. 521; State v. Sauls, 234 La. 241, 99 So.2d 97.
Likewise, the record fails to establish wherein the remainder of defendant's property will incur a depreciation in value as pasture land.
We believe, however, defendant is entitled to severance damages for the loss of his airstrip and the continuing inconvenience resulting from the increased hazard to planes which may be employed in future farming operations which may be conducted on the property and which latter factor, we think, will, to some slight degree diminish the market value of his remaining property for agricultural purposes.
Admittedly, the evidence on this score is meager and renders our obligation of assessing damages for such purposes rather difficult. However, in view of the evidence herein we feel that an award of $1,750 will adequately compensate defendant for all severance damages sustained by the expropriation of the servitude in question.
Accordingly, the judgment of the trial court is amended by reducing the compensation awarded defendant for the servitude taken from $4,300 to $2,496 and reducing compensation allotted for severance damages from the sum of $5,900 to the sum of $1,750, or an aggregate award in the amount of $4,246, and as amended, affirmed
Amended and affirmed.