LANDRY, Judge.
This is the last of the several expropriation suits filed by plaintiff herein, Central Louisiana Electric Co., Inc., against the several defendants in suits numbered 5220-5227, inclusive, 131 So.2d 369 to 131 So.2d 405, on the docket of this court, all of which are consolidated on appeal.
All defenses raised by present defendants (excepting their claims for compensation due for property taken and severance damage to remaining properties) have been disposed of adversely to defendants herein, Atwood L. Rice and Irene Rice Wchrmann, for reasons stated in Central Louisana Electric Co., Inc. v. Covington & St. Tammany Land & Improvement Co., La.App., *406 131 So.2d 369; Central Louisiana Electric Co., Inc. v. Stiegler et al., La.App., 131 So.2d 387; and Central Louisiana Electric Co., Inc. v. Harang, La.App., 131 So.2d 398, which reasons apply with equal force to the case at bar.
In the instant case, the learned trial court rendered judgment in favor of plaintiff granting the servitude prayed for but condemning plaintiff to pay defendants the sum of $14,750 as compensation for the servitude taken and the additional sum of $24,600 in reimbursement for severance damages due defendants’ remaining property.
Plaintiff has appealed praying that compensation for the servitude taken be reduced from the sum of $14,750 to the amount of $5,560 and severance damages be disallowed in toto. In answering the appeal, defendants request the award of damages for the servitude expropriated be increased to the sum of $16,250 and the allotment for severance damages enlarged to the sum of $35,-042.
The applicable general rules relative to the measure of compensation for property taken in expropriation proceedings have been set forth in detail in Suits Numbers 5220, 5221 and 5226, on the docket of this court, consolidated with the case at bar, and will not be herein reiterated more than is deemed necessary to a clear understanding of the issues herein presented for determination.
We believe it suffices to say it is the well-settled jurisprudence of this state that the measure of compensation for property taken in expropriation proceedings is the fair market value of the land expropriated considered in the light of its highest and best use. Fair market' value is the price paid as between a willing buyer and a willing seller under normal conditions and circumstances. The best evidence of fair market value is recent sales of similar property in the vicinity of the land sought to be expropriated. In the absence of recent sales of similar property courts may consider the opinion of experts regarding fair market value.
Defendants’ property is a large tract of land containing several hundred acres situated two miles west of Covington, Louisiana, bounded on the south by a gravel road known as “River Road” and bisected near its southern boundary by the Bogue Falaya River.
The portion of defendants’ land lying south of the Bogue Falaya River fronts on River Road which at the time of trial was in the process of being blacktopped by the Parish Police Jury. In the mid-1930’s the present owners subdivided that portion of their property lying south of the river, and running from the river south to River Road, into 32 lots each having a front of 200 feet on the north side of River Road and extending northerly between parallel lines to the Bogue Falaya River in depths varying from approximately 300 to 1,400 feet dependent upon the river’s meandering. Said lots numbered 1 through 32, inclusive, commencing at the easternmost extremity of defendants’ land (nearest Covington) thus have frontage on both the River Road and the Bogue Falaya River and are, by all parties concerned, considered choice or top-grade residential sites. In past years an undisclosed number of these lots have been sold nearest Covington at prices in the neighborhood of $35 per front foot or approximately $7,000 per lot. Although no lots have been sold in recent years all of the expert appraisers who testified herein agree that values in St. Tammany Parish have increased in recent years especially since the opening of the Lake Pontchartrain Causeway. The record reveals the demand for such choice building sites is currently active and the inference is clear the remaining lots are unsold solely because of the degree of selectivity employed by defendants in choosing prospective purchasers in order to maintain social standards and construction quality in the subdivision at the highest possible levels. It is further conceded that river frontage in this vicinity is extremely *407 valuable and a ready market exists for top-grade restricted residential sites on either side of the Bogue Falaya River which at the point in question is a non-navigable, narrow, shallow, clear and sandy scenic river ideally suited to the needs, desires and tastes of discriminating homeseekers in the top economic brackets.
The tract owned by defendants fronting on the north side of the Bogue Falaya River is an undeveloped tract of land comprising some S30 acres and is heavily wooded near the river to a distance of approximately 1,404 feet north thereof; the next 1,539 feet is considered medium timbered land and the northern 2,130 feet thereof lightly wooded. Four towers will be constructed on this portion of the property.
Between lots 13 and 14 of their subdivision lying south of the river defendants have reserved a 50-foot servitude or right of way for construction of a street to run from River Road to the Bogue Falaya River so that a bridge might eventually be constructed across the river to join said tracts and permit access to the property north of the river for the development thereof.
The center line of plaintiff’s servitude (which is 125 feet in width) enters defendants’ subdivision at a point on River Road 118 feet west of the eastern boundary of Lot 23 which fronts 200 feet on said River Road, said point of entry being 82 feet east of the western boundary of said lot. Because of the angle at which the line runs the servitude consumes 139 feet of the frontage of Lot 23. From the point where the center line traverses the southern boundary of Lot 23 it proceeds diagonally across said Lot 23 in a northeasterly direction crossing the eastern line of Lot 23 (the western boundary of Lot 22) at a point on said common boundary 449 feet north of River Road and 900 feet south of the Bogue Falaya River. From the crossing of the common boundaries of said Lots 22 and 23, said center line continues northeasterly in a diagonal course across Lot 22 intersecting the northern boundary of said lot 22 feet west of the boundary common to Lot 22 and abutting Lot 21 which common boundary between said lots measures 1,095 feet from River Road to the Bogue Falaya River. The Western boundary of Lot 23 measures 1,000 feet. The difference in the depth of said lots is explained by pointing out .that they are situated in a sharp bend of the river.
Plaintiff’s witnesses Deano and Baldwin valued the servitude taken at $40 per foot or the sum of $5,560, for the 139 feet of road frontage of Lot 23 included within the right of way. Both Deano and Baldwin were of the opinion that since they were allowing full fee simple value for the property within the servitude there would be no severance damages to any remaining portions of Lots 21, 22 or 23. Baldwin further testified that the remainder of Lots 21, 22 and 23 could be sold with no loss to defendant at the unit price of $40 per front foot provided Lots 22 and 23 were resubdivided using the center line of the easement as the common boundary of resubdivided Lots 22 and 23 from which would result Lot 21 in its present form, one lot consisting of part of present Lot 22 and the southeast corner of Lot 23, the western boundary of• which would be the center line of the easement and a third lot consisting of all of Lot 23 except the southeast corner thereof having a frontage of 82 feet (including the servitude) the eastern boundary of which would be the center line of the servitude.
Both Deano and Baldwin were of the opinion-that since their valuations accorded defendants recovery of fee simple value in full there would be no severance damages to any remaining property in defendant’s subdivision.
Defendants’ experts Powell and Patecek valued the servitude taken at $50 per foot or $6,950 for the 139 feet of frontage embraced within the right of way. In brief as well as in oral argument before this court learned counsel for plaintiff concedes there is no great disparity between these valuations respecting defendants’ subdivision properties considering that due to a lack *408 of recent sales of such properties all appraisals are necessarily predicated on sales of past years and, allowing for acknowledged current appreciation in value, the estimates of valuation of the subdivision property are reasonably accurate.
With respect to valuation of the large tract north of the Bogue Falaya River the testimony of the experts is more in conflict. Both Deano and Baldwin were of the opinion this property was valued at $300 per acre. Although they considered the property nearest the river of somewhat greater value than the remainder of the tract, they felt the average of the whole would be $300 per acre and predicated upon approximately 13 acres being included in the right of way, appraised the servitude north of the river in the sum of $4,500.
The servitude north of the Bogue Falaya River was valued by defendants’ witnesses in four separate classifications pursuant to which they assessed different valuations to various sections of the land. The property fronting on the river (to a depth of 800 feet) they valued at $35 per foot or $4,865 on the assumption a road could be constructed by defendants 800 feet north of the river and the area lying between such road on the north and the river on the south thereby converted into choice homesites in the same manner undertaken by defendants with respect to their property on the south bank of the river. They considered the demand for such river frontage property so great the land on the north bank could be sold even without construction of the road. In substance, they considered the property on the north bank of the Bogue Falaya equally as valuable as that already subdivided on the south bank thereof but placed a valuation of $35 per front foot thereon because they felt that the difference between $35 valuation on the north bank and $50 valuation on the south bank represented the difference between development costs. The land immediately north of the proposed residential sites (which would result from the construction of the road mentioned) for the next 600 feet, which would comprise the last of the heavily woodedi area, and which area contains approximately 1.75 acres, Powell and Patecek valued at $500 per acre or $885. They valued the 1,500 feet of medium wooded property containing 4.4 acres at $400 per acre or $1,760, and the 2,100 feet of lightly wooded' land containing approximately 6 acres at $300 per acre or $1,800.
In assessing severance damages to-defendants’ remaining subdivision property south of the river, Powell and Patecek were of the opinion the remaining portions of Lots 22 and 23 would be rendered completely valueless and, therefore, defendants-were entitled to the value of the remaining frontage thereof (261 feet at $50 per foot or $13,050). They further maintained that the-greater portion of Lot 21 will be included within the right of way, and its value will be diminished 50% or $5,000. It appears, however, their conclusion in this regard is in error since the maximum encroachment of the right of way on Lot 21 is approximately 50 feet diagonally across the extreme northwest corner thereof at the river. Finally, they contend Lot 24 (immediately to the west of Lot 23) will decrease in value $20 per foot or $4,000 because of its being situated within 300 feet of the center line of the right of way. They, therefore, estimated total severance damages to defendants’ remaining lots in the aggregate of $22,050.
Powell and Patecek were of the opinion that with the construction of a road across the property on the north side of the river, the entire area could be converted into choice homesites and that, therefore, there would be severance damages to remaining property on either side of the servitude for the entire distance that it traversed this large tract. The severance damages to which they alluded are inferred to result from the presence of the transmission line and towers which they contend will not only create a certain amount of purchaser resistance but also cause considerable radio *409 and television interference. Commencing at the river and proceeding northerly, they •considered the frontage on the river for a •distance of 230.5 feet on either side of the •right of way having a value of $35 per front foot would decrease in value $17.50 per foot or $8,067.50. The next 600 feet (the last of the heavily wooded area) they •considered the property on each side of the •servitude to a depth of 237.5 feet therefrom ■would depreciate 50% in value or $1,500, for the 6 acres therein contained; the next 1,539 feet and for a depth of 237}/£ feet on ■either side of the right of way (the medium wooded area containing approximately 17 acres), they estimated would sustain ■severance damages at the rate of $100 per ■acre or $1,700 and for the remaining 2,130 feet (the lightly wooded area) to a distance •of 237 feet on either side of the servitude, •consisting of approximately 23 acres, they ■estimated would sustain severance damages in the amount of $75 per acre or $1,725, resulting in severance damages to the large tract aggregating $12,992.50.
The learned trial judge did not favor us with written reasons for judgment, therefore, we are not cognizant of the exact basis •upon which he predicated his awards of ■compensation in the sum of $14,750 for the property taken by the servitude and $24,600 severance damages.
On the basis of the record as herein •constituted, we have no hesitancy in con■cluding the market value of defendants’ subdivision property to be $50 per front foot measured along River Road. Although plaintiff’s witnesses estimated the value of ■said property to be $40 per front foot, on appeal plaintiff does not seriously dispute the violation of $50 per front foot, and for obvious reasons. Even plaintiff’s experts •concede defendants’ subdivision is most exclusive and homesites therein are very much in demand. It is further acknowledged that plaintiff’s appraisals of $40 per front foot are based on sales of prior years and property values in the vicinity of the land in question have since appreciated considerably. The award of the trial court of $6,950 for the 139 feet of road frontage taken is, in our view, entirely correct and will be affirmed.
Regarding the market value of the property on the north side of the river, it is agreed by all parties hereto that the width of the servitude at the river bank (because of the angle of the line) will be 139 feet. Although there is some dispute concerning the condition of the land on the north bank of the river (plaintiff maintaining it is low and swampy for a distance of about 500 feet from the river bank whereas defendant contends within 100 feet of the hank there is high ground suitable for residential construction), we believe that the clear preponderance of the evidence establishes that there exists a ready and active market for river frontage on the north bank of the Bogue Falaya River (if such property were offered for sale) to virtually the same degree that demand exists for property in defendants’ subdivision on the south river bank. Although plaintiff’s witnesses dispute the elevation of the land at the particular point where the servitude traverses the north bank of the river, they acknowledge that river frontage on either side at this point is very valuable, highly desirable and earnestly sought after. There is also in the record testimony of defendants’ witnesses that road access to river frontage property is not absolutely necessary to the sale of desirable residential river sites of the character possessed by defendants on both sides of the river.
We think the record establishes beyond question a ready market for such river front property for choice residential homesite development, that the market presently exists and is currently active. It is not an indefinite future use which might arise at some uncertain time hence. It is established to a reasonable certainty and because of the certainty thereof, it may be said that the highest and best use of said river bank property on the north side of the river is residential purposes and its market *410 value in a condemnation proceeding predicated upon such use. We further believe the record reflects a present demand for property of this nature and in this particular area' and, additionally, that its sale for residential purposes is dependent solely upon defendants’ election to place it on the market. We conclude, therefore, defendant is entitled to compensation for said property north of the river at the sum of $35 per foot to a depth of 800 feet which predicated upon a frontage of 139 feet aggregates the sum of $4,865.
We disagree with defendant’s appraisers regarding the evaluations placed upon the remaining portion of the property embraced within the servitude north of the river. Defendants’ experts introduced sales of certain tracts in the general area which are not true comparables inasmuch as they do not take into consideration the location and character of the property involved herein. They were of the opinion the land was suitable for subdivision development and could be subdivided and sold as small acreage building sites. Their appraisals fail to consider the property is presently undeveloped; that it has no roads upon it and is touched by only one gravel road which connects with the northeast corner thereof. In an effort to establish a much higher value for this particular property, in addition to the experts mentioned, defendants introduced the testimony of one Philip Burns, who sold a piece of unimproved property on little Bogue Falaya River and a paved highway situated about three miles from Covington, Louisiana; also the testimony of Mrs. Rose C. Heyer who sold a lot adjacent to her home on River Road about one mile from defendants’ property and running from the road to the river and the testimony of one C. A. Bertel, who owns several tracts of land near Covington, Louisiana, one of which contains 200 acres and adjoins defendants’ property on the north side of Bogue Falaya River. Burns testified to having sold small plots in recent years at acreage prices considerably in excess of the valuations placed upon defendants’ properties herein by any of the experts.
We do not deem it necessary to consider in great detail each of the transactions mentioned by the various witnesses produced by defendant except to state the record shows that whereas the sales referred to by said parties are transfers of properties situated in the same general vicinity, there are distinguishing features in each instance such as the location of said properties on existing improved roads, or sales including servitudes for access roads to be built by the purchaser, or the inclusion therein of the right to use of private roads already constructed. The only road presently connecting defendants’ property is the road which touches the northeast corner thereof which point is considerably removed from the right of way in question.
The record does not, in our opinion, show a ready market for this remaining property for use as residential building sites in the reasonably near future with that degree of certainty as is shown for the river frontage. Granted it may have such potential use, it has not been shown that such use is reasonably immediate and it must therefore be held to be speculative, remote and conjectural.
Considering all of the testimony of record, we conclude the rear portion of the servitude north of the river is valued at the sum and price of $300 per acre which incidentally, is the valuation placed on approximately one-half thereof by defendants’ own experts. It appears the rear portion of said servitude comprises 12.15 acres (1.75 acres in the remaining 600 feet of heavily wooded area, 4.4 acres in the 1,400 feet of medium wooded area and 6 acres in the 2,100 feet in the lightly wooded area) which, at the unit price of $300 per acre, amounts to the sum of $3,645.
The severance damages enumerated by defendants’ appraisers concerning the property adjacent to the right of way north of the river are predicated on the same *411 grounds and contentions tendered in Central Louisiana Electric Co., Inc. v. Covington & St. Tammany Land & Improvement Co., 131 So.2d 369; Central Louisiana Electric Co., Inc. v. Stiegler et al., 131 So.2d 387; and Central Louisiana Electric Co., Inc. v. Harang, 131 So.2d 398, consolidated herewith, and for the same reasons therein set forth are deemed to be without merit.
The final issue presented is the question of severance damages due for alleged diminution in value to defendants’ remaining subdivision property situated south of the Bogue Falaya River. Defendants’ contention the remaining portions of Lots 22 and 23 will be rendered utterly valueless because of the diagonal crossing of the servitude is, in our judgment, without merit or foundation. Lot 23 measures 200 feet front on the River Road, the east line thereof measuring 1,349 feet from the road to the river bank and the west line measuring 1,000 feet between the road and the river. There will be no tower on Lot 23 and the means of ingress and egress thereto from the River Road will be unrestricted. The center line of the right of way crosses the southern boundary of Lot 23 at a point 82 feet east of its southwest corner and 118 feet west of the southeast corner thereof and, from this point, proceeds diagonally in a northeasterly direction crossing the east line of Lot 23 at a point 449 feet north of River Road. According to calculations made for the author of this opinion by his longtime friend and associate, Mr. N. J. Corona, graduate Electrical Engineer (Louisiana State University), whose assistance in this regard is hereby gratefully acknowledged, the eastern right of way line will cross the common boundary between Lots 22 and 23 at a point approximately 203.12 feet north of River Road and the western limit of plaintiff’s right of way will intersect the common boundary between Lots 22 and 23 at a point approximately 694.88 feet north of River Road. From these calculations, it appears that the northern portion of Lot 23 commencing 694.88 feet north of River Road measuring 200 feet front by a depth of approximately 654.12 feet along its eastern line to the river and by a depth of approximately 305.12 feet along its western line to the river bank will be unaffected by plaintiff’s servitude. It would appear to us that despite the fact the front portion of said Lot 23 may not be utilized for construction and will undoubtedly be denuded and kept clear of timber, the northern portion thereof will unquestionably have some resale value as a homesite.
Since the eastern extremity of plaintiff’s right of way will strike the western boundary of Lot 22 at a point approximately 203.12 feet north of River Road, it follows that approximately one acre of Lot 22 facing River Road will remain unaffected by plaintiff’s servitude which acre of land may also be utilized as a homesite. It is conceded the rear or northern portion of Lot 22 will be occupied principally by the servitude within the limits of which no improvements may be constructed and upon which all trees will be destroyed in order to protect plaintiff’s line. Unquestionably the beauty of the river frontage of Lot 22 will be totally destroyed. The presence of the tower situated at the river 22 feet from the eastern boundary of this lot will certainly not add to its desirability as a riverside residential site. We believe the condition mentioned will depreciate the value of Lot 22 approximately 60% or $6,000, which amount will be awarded defendants in severance damages. No portion of the river bank of Lot 23 is affected by the servitude since, as herein previously shown, the western limit of the servitude crosses the eastern boundary of Lot 23 at a point 654.12 feet from the river. As previously shown, the northern portion of said property will be free of the servitude to such extent that it may be employed as a residential building site. We believe the remaining portion of Lot 23 will, however, suffer some depreciation. Allowing for the 139 feet of road frontage taken by the right of way, from Lot 22, there remains 61 feet of frontage (portions of. which are situated on either side of the servitude), which *412 valued at $50 per foot gives a remaining valuation of $3,050. We believe the remaining portion of said lot will be depreciated to the extent of approximately 1/3 of said remaining value of $3,050 and will, therefore, allot severance damages attributable to Lot 23 in the sum of $1,050.
The right of way will encroach upon Lot 21 only in the northwest corner thereof at the river as a consequence of which a small triangular area at the river bank will be involved and must be kept free of buildings and trees. Considering river frontage is one of the desirable features of such property and the presence of the tower 22 feet across the line on Lot 22, we believe Lot 21 will be depreciated to the extent of 10% of its value or the sum of $1,000 and severance damages in said amount will also be awarded herein.
Defendants’ claim for severance damages to Lot 24 is without foundation. No portion thereof is situated within plaintiff’s right of way and severance damages based upon alleged radio and television interference are without foundation for the reasons set forth in Central Louisiana Electric Co., Inc. v. Covington & St. Tammany Land & Improvement Co., La.App., 131 So.2d 369; Central Louisiana Electric Co., Inc. v. Stiegler et al., La.App., 131 So.2d 387; and Central Louisiana Electric Co., Inc. v. Harang, La.App., 131 So.2d 398.
In recapitulation we find defendants entitled to the following damages herein:
Value of the servitude taken from the large tract:
139 ft. at $35.00 per foot - $4,856.00
12.15 acres at $300.00 per acre - 3,645.00
Severance damages - None
Value of servitude taken from subdivision property
139 ft. at $50.00 per foot - $6,950.00
Severance damages Lot 23 - 1,050.00
Severance damages Lot 22 - 6,000.00
Severance damages Lot 21 - 1,000.00
Total value of servitude taken from both tracts - $15,460.00
Total severance damages 8,050.00
For the reasons hereinabove set forth, the judgment of the trial court is amended by increasing the compensation awarded defendants for property expropriated from the sum of $14,750 to the sum of $15,460 and decreasing the amount allotted defendants in compensation for severance damages from the sum of $24,600 to the sum of $8,-050, and except as herein expressly amended, the judgment of the trial court stands affirmed.
Amended and affirmed.