ON REHEARING
GLADNEY, Judge.
The appellant in its application for rehearing objects to the basis for our determination of $333.33 as the compensation to-be paid the defendant for the compulsory taking of the pipeline right of way. In our former decree this amount designated as-the fair market value was arrived. at om the basis of evidence that the defendant, rented portions of its railroad right of way for various commercial purposes for a price based upon six percent of a value of ten cents per square foot, and this rental-value capitalized was found to be $360.50.. Additionally it was shown that the defendant had during the preceding two years; made rental contracts with similar pipeline crossings for an annual rental of $20.00 per crossing. From such income the property expropriated was calculated to have a fair market value of $333.33. The lesser of the two sums, namely, $360.50 and $333.33 was accepted by the court as fair and just compensation for the property expropriated.
Plaintiff-appellee contends that the court’s award of the capitalized value of the rental which the railroad company had *320 charged for other pipeline crossings is a specialized application of the ordinary rule for determination of market value by comparison of similar sales, and that in doing so the court has overlooked the fact that pipeline crossings over railroads have no real market value and that under universally settled legal principles in condemnation proceedings the necessities and value to the taker of the right taken must be disregarded. It is argued that if this be a legally accepted basis for determination of value the generally prevailing charge by other railroad companies in this area for such crossing rights ranges from $25.00 to $45.00 per crossing and that the latter figure should be the top figure which the court could find on such a basis.
Under Chapter Two Of The Compulsory Transfer Of Property, LSA-C.C. art. 2628 provides that in all cases, a fair price should be given to the owner for the thing of which he is dispossessed. Another article of the Code, article 2633 provides :
“In estimating the value of the property to be expropriated, the basis of assessment shall be the true value which the land possessed before the contemplated improvement was proposed, and without deducting therefrom any amount for the benefit derived by the owner from the contemplated improvement or work.”
Repeatedly enunciated in our jurisprudence is the definition of market value of property expropriated for public use found in Central Louisiana Electric Company v. Harang, La.App., 131 So.2d 398, at page 401 (1st Cir. 1961) wherein the court said:
“It is settled jurisprudence of this state that the valuation to be placed on expropriated land is its market value at the time of taking and that market value is the fair value as between a willing purchaser and a willing seller under ordinary and usual circumstances. Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914; Texas Pipe Line Co. v. Barbe, 229 La. 191, 85 So.2d 260.
“Market value of property expropriated for public use must be determined in the light of the best and highest use to which the property may reasonably be put but to constitute best and highest use for residential subdivision purposes in determining market value, it must be made to appear that there is reasonable expectation the property may be so used or developed in the not too distant future. Plaquemines Parish School Board v. Miller, 222 La. 584, 63 So.2d 6.” [131 So.2d 398, 401]
It was also declared in McMahon et al. v. St. Louis, A. & T. R. Co., 41 La.Ann. 827, 6 So. 640, 641 (1889), quoted with approval in City of Shreveport v. Kansas City Southern Ry. Co., 193 La. 277, 190 So. 404 (1939):
“As in the case of a taking the measure of compensation is the value of the property taken, so in the case of damages, the measure of compensation is the diminution in the value of the property.
“There is no warrant for extending the liability one whit beyond this. We are simply to inquire what damage has been done to the property, i. e., to its value for rental and sale. Mere consequential injuries to the owners, arising from discomfort, disturbance, injury to business, and the like, remain, as they were before, damna absque in-juria, — particular sacrifices which society has the right to inflict for the public good.” [190 So. 404, 406]
In the instant case the record reveals the defendant railroad was the owner in fee of the property sought to be expropriated. True, this factor may not have any material effect upon the value of the property taken forasmuch as the railroad must continue to subject the property to a public use and the rights acquired by *321 the pipeline company taker of necessity can amount to not more than an easement, the use of which must be exercised at least concurrently with the uses made of the same property by the railroad. In arriving at its market value determination this court gave consideration to evidence as to the fair value of adjacent property. Consideration was likewise given to annual rental payments for similar pipeline crossings which have been made to the same defendant within the past two years. It appears to us that the court did not err in its determination of the value of the pipeline right of way taken in this instance.
Further objection to the court’s opinion is directed to our recognition of the “defendant’s paramount rights to the safe and proper operation of its railroad and trains over the property expropriated”. It is urged that the rights of the pipeline company should be co-equal with those of the defendant in order that plaintiff may safely and properly operate its pipeline. We are not referred to any particular authorities on this point. However, in Postal Telegraph Cable Company v. Louisiana Western Railroad Company, 49 La.Ann. 1270, 22 So. 219, 221 (1897) after discussing the correlative rights of the telephone company to use the railroad right of way for the establishment of its poles and lines the court concluded this issue favorable to the railroad company saying:
“We do not think it was the intention of the lawmaker to abridge the franchises of the corporation already holding possession, or to cast affirmative, active duties upon them in respect to telephone lines which might be constructed upon their right of way. We think the lawmaker intended simply to force public corporations holding a right of way by expropriation to permit the use and occupation of a portion of the same whenever the conditions under which the legal permission to do so was granted, and upon which it was based, were found to exist, and so long as they should continue to exist. These conditions are ‘that the ordinary use of the roads, works, railroads, and waters be not thereby obstructed.’ We are inclined to believe that should the situation of affairs change subsequently, so as to make it necessary for the original corporation, in order to carry out their functions and duties, to resume the use of the whole or a portion of the right of way which the second company had newly acquired, they could legally do so (unless controlled by special considerations), through proper proceedings and proof, and under proper conditions. ‘Qui prior est tempore potior est jure.’ ” [22 So. 219, 221]
It is our conclusion therefore that our former opinion properly assessed the value of the right of way taken and under the holding in Postal Telegraph Cable Company v. Louisiana Western Railroad Company, the appellee railroad company herein is entitled to the paramount position accorded it in the decision.
Our former decree is reinstated and made the judgment of this court.