LANDRY, Judge.
This is one of the expropriation suits consolidated with Central Louisiana Electric Co., Inc. v. Covington & St. Tammany Land & Improvement Co., 131 So.2d 369.
The issues raised by defendants herein respecting plaintiff’s right of expropriation and the. location and manner of constructing the proposed electric transmission line have, for reasons assigned in Central Louisiana Electric Co., Inc. v. Covington & St. Tammany Land & Improvement Co., supra, been resolved adversely to defendants.
There remains for decision only the questions of the amount of compensation due defendant owners for the servitude taken and the amount of severance damages to their remaining property, if any.
Plaintiff’s two expert witnesses, Edward Deano and Robert Baldwin, valued the servitude taken from present defendants at $250 and $150 per acre, respectively, and neither found that the taking and use of defendants’ property for the purpose sought by plaintiff would in any way diminish or decrease the value of defendants’ remaining property. On the other hand, defendants’ experts, Randy Powell and Frank Patecek, each valued the servitude at $400 per acre or an aggregate of $4,000 for the 10 acres involved and found severance damages to defendants’ remaining property in the like sum of $4,000.
The trial court awarded $3,450 for the property embraced within the servitude and $2,500 in severance damages. On appeal,. plaintiff does not contest the correctness of the award of $3,450 granted for the right of way but complains only that the award of $2,500 as severance damages should be annulled and set aside in its entirety. Defendants have answered the appeal praying that the awards for both property taken and severance damages to remaining property be increased to the sum of $4,000.
The property involved in the instant litigation is a large tract of vacant, unimproved cut-over land containing approximately 230 acres situated on the west side of the Covington-Folsom Highway (a paved highway) about two miles north of Cov-ington, Louisiana. It bounds, on the north, west and south, the property of Dalton J. Barranger, defendant-owner in Central Louisiana Electric Co., Inc. v. Barranger, 131 So.2d 393 (consolidated herewith), so that the Barranger property fronting on the same highway appears as a triangular wedge slightly north of the center of the road frontage of the property belonging to defendants in the case at bar. The center line of plaintiff’s servitude (which is 125 feet in width) enters subject property at a point on the boundary common to the property of present defendants and said Barran-ger 290 feet west of the highway from which point it runs in a southwesterly direction a distance of 3,529 feet leaving defendants’ property at a point on its western boundary north and in the vicinity of the northwest corner of the tract. Since the Barranger property lies between the highway and the point at which the servitude commences on the land of present defendants, no portion of defendants’ highway frontage is taken or affected by the easement required in this particular case. Three towers will be erected within the right of way required of these defendants and will be constructed approximately 1,300 feet apart.
Plaintiff’s expert, Deano, classified the property as vacant land with some large holes thereon evidently left in the removal of tree stumps. He found evidence of a branch on the land but was unaware it was drained by two canals. He was of the opinion the property had no frontage on the Folsom Highway and that it was not well *392 drained. Using as comparables several recent sales of property he considered more advantageously located, Deano appraised the property at $250 per acre or $2,500 for the 10 acres required for the construction of plaintiff’s transmission line. Deano did not state what he considered to be the highest and best use of the property but testified he considered the land “investment property”. He acknowledged the land might be potentially adaptable for residential subdivision development but did not consider it marketable for such usage within the reasonably near future. In this regard, he stated further that current residential development seemed to be centered on the opposite side of Covington near the new hospital. He acknowledged the existence of a subdivision approximately one mile removed from defendants’ property but considered said subdivision a failure inasmuch as, within a period of one year of its development, the owners had sold only six lots and no homes or improvements had been constructed therein. Deano further acknowledged that if the property were drained and possessed frontage on the Folsom Highway its value would be greater than his estimate of $250' per acre.
Robert Baldwin, plaintiff’s other expert witness, testified to substantially the same effect as Deano except that he appraised the property at $150 per acre. Baldwin was of the opinion the property would be expensive property in the “years to come” but that at present it had no value for residential subdivision development because, in his opinion, such type of development was currently taking place on the opposite side of Cov-ington near the hospital. Baldwin conceded that if the property were drained its value would be enhanced $100 per acre and if it possessed frontage on the Folsom Highway its value would be increased an additional $25 per acre.
Randy Powell and Frank Patecek, expert witnesses called on behalf of defendants, valued the servitude at $400 per acre or $4,000 for the 10 acres included therein. Their valuation was predicated chiefly upon a transaction wherein defendants sold a portion of subject property containing 6j4 acres for the sum of $4,000. The property included in the comparable used by Powell and Patecek fronts 210 feet on Folsom Road by a depth of 6^ acres. Powell and Pate-cek valued the property at $10 per front foot to a depth of two acres or approximately $2,000 for the two acres nearest the highway. The remaining consideration of $2,000 they allocated to the rear 4^ interior acres resulting in an evaluation thereof at a unit price of approximately $420 per acre. They both considered the property to be suitable for residential subdivision development.
In awarding compensation for the servitude taken in the sum of $3,450 or $345 per acre (approximately $100 more per acre than the valuation placed thereon by plaintiff’s witnesses and approximately $55 per acre less than the valuation placed thereon by defendants’ experts), the learned trial court apparently considered the fact that plaintiff’s appraisers were unaware subject property was well drained or that any portion thereof fronted on the Folsom Highway. In this connection the record shows neither Deano nor Baldwin were conscious of tile fact that the property fronted on the highway but were of the opinion it fronted only on a dirt road which branches off from the Folsom Highway at a point north of the Barranger property and, in a manner roughly resembling a crescent, runs westward from the Folsom Highway behind the Bar-ranger property reconnecting with the Folsom Road to the south of defendants’ land. On the assumption that defendants’ property fronted only on this dirt road, plaintiff’s experts believe access to the highway from defendants’ property could only be obtained over property belonging to other owners.
We believe the learned trial judge, in his wisdom, considered that the portion of the servitude taken from defendants does not involve or deprive defendants of any *393 of their highway frontage from which he concluded the land embraced within the servitude was worth less than the $400 per acre valuation placed thereon by defendants’ experts. The evidence convinces us that although the property in question herein may have potential value for residential subdivision development, there is nothing to indicate or establish that it may be dedicated to said use in the reasonably near future. We believe the record reflects such potential use to be remote and indefinite from which it follows its use for such purpose must be held conjectural and speculative. Such uncertain, indefinite and remote potential use cannot serve as best and highest use for the purpose of determining compensation due for its taking in an expropriation proceeding.
We further believe the sum of $3,-450 awarded by the trial court as the value of the servitude gives to the testimony of all expert witnesses who testified herein such effect as appears justified by fairness and good reasoning considering the grounds on which the respective appraisals were founded, in accordance with the established jurisprudence of this state. State of Louisiana through Department of Highways v. Glassell, 226 La. 988, 77 So.2d 881; Housing Authority of New Orleans v. Boudwine, 224 La. 988, 71 So.2d 541; City of Shreveport v. Jones, 236 La. 727, 109 So.2d 72.
We believe the amount allotted by the trial court for the servitude to be acquired herein represents the fair market value of defendants’ property and said award will not be disturbed.
Defendants’ claim to severance damages is based on the contention the value of a strip 237J4 feet wide lying adjacent to either side of the servitude (encompassing 40 acres suitable for residential subdivision development) will be diminished in value to the extent of $100 per acre. In this connection defendants’ experts reason that the presence of the line will render the adjoining property unattractive to prospective purchasers because of the fear of personal danger therefrom as well as the apprehension of radio and television interference. The answer to this contention is two-fold: First, it has not been satisfactorily shown the highest and best use of subject property is residential subdivision development. Secondly, assuming its highest and best use to be residential subdivision development as contended by defendants, proof of severance damages of the nature relied upon by defendants has not been made with that degree of certainty required by law for reasons set forth in Central Louisiana Electric Co., Inc. v. Covington & St. Tammany Land & Improvement Co., La.App., 131 So.2d 369; Central Louisiana Electric Co., Inc. v. Stiegler et al., La.App., 131 So.2d 387 and Central Louisiana Electric Co., Inc. v. Harang, La.App., 131 So.2d 398.
It follows, therefore, the judgment of the trial court must be amended to annul, rescind and set aside that portion thereof awarding defendants severance damages in the sum of $2,500, and as amended, affirmed.
Amended and affirmed.