188 So.2d 618 (1966)
LOUISIANA POWER & LIGHT COMPANY, Plaintiff-Appellant,
v.
Meyer GREENWALD, Defendant-Appellee.
No. 10582.
Court of Appeal of Louisiana, Second Circuit.
May 30, 1966.
Rehearing Denied August 4, 1966.
Writ Refused October 11, 1966.
*619 Theus, Grisham, Davis, Leigh & Brown, Monroe, George Spencer, Sevier, Yerger & Sevier, Tallulah, for appellant.
Lancaster, Baxter & Seale, Tallulah, for appellee.
Before HARDY, AYRES and BOLIN, JJ.
AYRES, Judge.
This is an expropriation proceeding, the object of which is the acquisition by plaintiff of a right of way in the nature of a servitude 200 ft. wide extending 6691.4 ft. across defendant's property for the purpose of constructing and maintaining electric transmission lines of a capacity of 500 kv.
From a judgment granting plaintiff the right of way upon the payment of $20,736.00 as compensation for the servitude, predicated upon the value of the land embraced within the servitude less the owner's retention value therein, and upon the payment of the additional sum of $10,317.50 for severance damages sustained to 77.65 acres adjacent to the right of way, plaintiff prosecutes this appeal.
By this appeal and defendant's answer thereto, the issues before this court for determination are the identical issues presented to the trial court. These relate to the right of plaintiff to expropriate defendant's property, the compensation to be paid for the servitude, and the damages sustained to the remainder of defendant's property. In addition, an issue presented on the appeal involves a determination of the fees of the expert witnesses testifying on behalf of defendant.
Defendant's property comprises a tract of 995 acres, 715 acres of which is very fertile and highly productive agricultural land. The remaining 280 acres consist principally of woods and a bayou running through the property. The area encompassed within the right of way or servitude comprises 30.72 acres, of which approximately 25.5 acres consist of farm land and approximately 5.22 acres of woodland.
Upon the right of way, as it traverses defendant's property, plaintiff proposes to locate six steel towers. Each of the towers will be erected on concrete footings extending 12-13 ft. in the ground. The bases for four of the towers will have an overall dimension of 13 ft. 5 in. × 33 ft. 7 in. and a height of 119 ft. 6 in. The remaining two, erected on similar bases but of a dimension of 14 ft. 3½ in. × 37 ft. 1¾ in., will have a height of 129 ft. 6 in. On top of these towers, the distance between which will range from 1000-1400 ft., will be placed crossarms 89 ft. in length and used to support nine cables or conductors 1½ in diameter. The elevation of these cables will vary from a maximum height of approximately 129 ft. to a minimum of 35 ft. above the ground at the point of lowest sag. The aggregate area to be occupied by these towers comprises 2947.318 sq. ft., or.00676 of an acre.
The question presented as to plaintiff's right to expropriate the aforesaid *620 right of way is based upon the contention that there is no public need for the proposed facility. This contention is without merit. Such was the conclusion reached by the trial court, and, with it, we agree. Plaintiff offered the testimony of two of its engineers to establish the need and purpose of the proposed line. Both testified that the construction was to increase the capacity of plaintiff's electrical system by connecting or interlocking it with other systems to fulfill and supply the ever-increasing electrical needs of the immediate as well as other areas of this State. The need for electrical power on the part of domestic, commercial, and industrial users in the territory served by plaintiff was shown to be increasing at a rate of approximately 11% per year, and the demands for electrical energy are being doubled every six or seven years. Growth, such as this, must be anticipated by operators of public utilities. The purpose of the contemplated construction is to assist in the supplying of these needs, as well as to provide a means for interchanging peak loads of electricity with the Tennessee Valley Authority.
As to the amount of compensation to be paid for the right of way sought, and for damages sustained to the remainder of defendant's property, plaintiff offered the testimony of two experts; defendant offered the testimony of three. To the qualifications of one of these, plaintiff, however, strenuously objected. We do not find it necessary to resolve this issue of the contested witness' qualifications. Resolution of that issue is not necessary to a determination of the amount of compensation to which the defendant is entitled.
No controversy exists as to the highest and best use to which defendant's property may be utilized. For many years this property has been used for agricultural purposes; it is being so used at the present time. There is no other contemplated or prospective use for it.
In resolving issues relating to compensation to be paid for property through expropriation for public use there are certain fundamental principles which must be borne in mind. First, there is the general rule that "private property shall not be taken or damaged except for public purposes and after just and adequate compensation has been paid." La.Const. Art. 1, § 2. The "just and adequate" compensation to which an owner of property taken in expropriation proceedings is entitled is the full and perfect equivalent of the property taken, that is, the loss caused the owner by the taking, so that the owner shall be put in as good position pecuniarily as he would have been if the property had not been taken. Housing Authority of Shreveport v. Green, 200 La. 463, 8 So.2d 295 (1942); State Through Dept. of Highways v. Barrow, 238 La. 887, 116 So.2d 703 (1960).
The general rule follows that the measure of compensation to be awarded an owner in expropriation proceedings is the price which would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy, that is, the "market value" of the property. Housing Authority of Shreveport v. Green, supra; Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914 (1944); Louisiana Highway Commission v. Paciera, 205 La. 784, 18 So.2d 193 (1944); City of Shreveport v. Abe Meyer Corp., 219 La. 128, 52 So.2d 445 (1951); Louisiana Power & Light Company v. Simmons, 229 La. 165, 85 So.2d 251 (1956).
As foundations for their conclusion as to the value of the property in fee within the right of way, all the witnesses resorted to comparable sales. We do not deem it necessary to minutely discuss the facts or the reasons upon which these witnesses predicated their individual conclusions. A resume of their findings is deemed sufficient. The sales of properties classified as "comparables" ranged in price from $310.00 to $500.00 per acre. After making necessary adjustments for differences existing in the subject property from those of the "comparables," plaintiff's testimony indicated *621 that the subject property had a value ranging from $335.00 to $400.00 per acre. Two of defendant's witnesses were apparently of the opinion that defendant's property as a whole had a value of $450.00 per acre. The other, the one whose qualifications were questioned, placed the value of the property contained within the right of way at $1,350.00 per acre. This, he arrived at by multiplying its purported market value by three.
As to the last of the aforesaid evaluations, we find neither a factual nor legal basis for tripling the market value of property to reach a basis of an award of compensation. Nor do we think that the "strip" expropriated tripled in value in the process of expropriation. We are not, however, unmindful of the fact that by its topography and other characteristics peculiar to itself a "strip" of land expropriated for right-of-way purposes may possess, by virtue of its superior qualities, a value greater than that of the property as a wholebut, in such event, this superior value must be made to appear to a legal certainty by a reasonable preponderance of the evidence. The record in the instant case does not contain such proof.
Inasmuch as we bind ourselves by our foregoing conclusions, we feel that the record in the instant case supports a finding that the right-of-way area, a strip containing both agricultural and wooded land, has a market value of $400.00 per acre. This finding, however, is not the solution to the question presented. The basic question is the value of the servitude expropriated for right-of-way purposes. Other factors to be considered include the value of the rights retained by the owner in the right-of-way area. In the instant case, the landowner continues to have full use of the property except for the construction of buildings or the exercise of other activities which would interfere with the rights of the owner of the servitude. Thus, he may continue with his farming operations in the same manner and for all practical purposes to the same extent as theretofore. In cases where the landowner will continue to have use of the property, the right of way should be valued at one-half of its fee value. Texas Pipe Line Co. v. Johnson, 223 La. 380, 65 So.2d 884, 38 A. L.R.2d 785 (1953); Louisiana Power & Light Company v. Simmons, supra; Gulf States Utilities Co. v. Domingue, 72 So.2d 623, La.App., 1st Cir.1954; Louisiana Power and Light Company v. de Bouchel, 143 So.2d 270, La.App., 4th Cir.1962; Central Louisiana Electric Company v. Fontenot, 159 So.2d 738, La.App., 3d Cir.1964.
Therefore, the value of the servitude expropriated for the right of way should be, and is hereby, fixed in the sum of $200.00 per acre, or at $6,144.00 for the total acreage included within the right of way.
There was a great divergence of opinion of the witnesses as to the severance damages sustained to defendant's adjacent property. While one of plaintiff's witnesses could assign no damages, the other expressed an opinion that a described 32 acres located in the southeast corner of the farm would sustain damages to the extent of $25.00 per acre, and that four acres south of the proposed line and west of the bayou would sustain damage to the extent of $172.50 per acre. One of defendant's witnesses estimated the additional damaged area at 160.7 acres of the open land and 26.6 acres of the woodland. The first, he would depreciate at $150.00 per acre and the latter at $50.00 per acre. Another of the witnesses concluded that a strip 200 ft. wide on each side of the right of way sustained a loss in value of $125.00 per acre. The third of defendant's witnesses, the one whose testimony as an expert was questioned, estimated the severance damage of the remaining property at 10% of its value, or the sum of $43,392.60. No reasons were assigned for calculating damages on a percentage basis; nor does the record establish any basis for such calculation. There was no showing that the whole of the property would sustain damage. The *622 court, however, concluded that 64.35 acres of the agricultural land had sustained damage to the extent of $150.00 per acre, and that 13.3 acres of the wooded area had sustained damage to the extent of $50.00 per acre.
From our review and appreciation of the record, after giving consideration to the testimony of all the witnesses, we are of the opinion that defendant did sustain severance damages to a portion of the remainder of his property. This damage is predicated largely upon the inconvenience and difficulties that will be experienced in the aerial application of fertilizer and insecticides. We are not, however, impressed that the inconvenience and difficulties would exist over a too considerable portion of the property. According to the testimony of those in the business of supplying these aerial services, such activities may be performed, but the presence of the electrical lines constitutes another problem and adds to the difficulties in their rendition. This inconvenience in operation, according to M. C. Gehr, one of defendant's experts, would extend over a strip 200 ft. wide on each side of the right of way and would thus comprise an area of 61.44 acres. Obviously, the difficulties and inconvenience that will be experienced over this additional area are not nearly so great as those which will be encountered within the area of the right of way itself where the farming activities must be conducted under the transmission lines and around the bases of the towers, and where the aerial applications must be made by flying either underneath or immediately above the transmission lines.
Within the right of way itself, we have concluded, as heretofore stated, that the landowner has a retention value of $200.00 per acre, or 50% of its market value. In this additional area, we conclude that the defendant landowner has a retention value of $300.00 per acre and that he has therefore sustained damages to the extent of 25% of the land's value, or $100.00 per acre, or a total severance damage of $6,144.00.
Lastly for consideration is the question of fees allowed the expert witnesses testifying on behalf of defendant. Inasmuch as plaintiff made no tender of an amount adequate to compensate defendant for the servitude to be acquired and the damage done, we find no basis for relieving it of the payment of these fees.
LSA-R.S. 13:3666, subd. A provides that
"Witnesses called to testify in court only to an opinion founded on special study or experience in any branch of science, or to make scientific or professional examinations, and to state the results thereof, shall receive additional compensation, to be fixed by the court, with reference to the value of time employed and the degree of learning or skill required.
When determined, such fees are taxed as cost and ordered paid by the party cast in judgment.
Appropriate here is an observation of the Supreme Court in Recreation and Park Commission, etc. v. Perkins, 231 La. 869, 93 So.2d 198, 200 (1957), wherein it was stated:
"Fees to be paid experts depend much on the time lost and the extent of their examination of matters on which they express an opinion and it appears that no absolute rule can be fixed as to the amount to be allowed in all cases. Unquestionably under the provisions of LSA-R.S. 13:3666 experts are entitled to not only a fee for their appearance in court but also an award for their preparatory work, but these fees must be reasonable and somewhat in line with the fees heretofore allowed by the courts of this state."
In the instant case, the work required of and performed by the experts included the search of the conveyance records for recent comparable sales, followed by an inspection and appraisal of such properties to determine their comparability *623 with the subject property, which, of course, required an inspection and appraisal. Of the several properties investigated, four or five were found to serve as "comparables." On a basis of the performance of this work, we cannot conclude there was error in the fixing of fees at $250.00 each for the witnesses' preparatory work. The witnesses were in attendance in court for three days. Their fees for this attendance was fixed at $100.00 per day. This, we think, was excessive. In the cited case (Recreation and Park Commission, etc. v. Perkins, supra), the Supreme Court reduced identical allowances to $50.00 per day.
For the reasons assigned, the judgment appealed is amended by decreasing the award of compensation to be paid by plaintiff to defendant to the principal sum of $12,288.00, and by decreasing the fees of the expert witnesses for their attendance in court to $50.00 per day each, and, as thus amended, it is affirmed.
The defendant is assessed with the cost of this appeal.
Amended and affirmed.