207 So.2d 380 (1968)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
Maxie Mae Welch JENKINS, Defendant-Appellee.
No. 2146.
Court of Appeal of Louisiana, Third Circuit.
February 7, 1968.
Rehearing Denied February 26, 1968.
*382 Marshall W. Wroten, Glenn S. Darsey, by Glenn S. Darsey, Baton Rouge, for plaintiff-appellant.
Gahagan & Gahagan, by Marvin F. Gahagan, Natchitoches, for defendant-appellee.
Before FRUGEé, SAVOY and HOOD, JJ.
FRUGEé, Judge.
This is an expropriation suit brought by the State of Louisiana, through the Department of Highways (hereinafter referred to as the State) pursuant to R.S. 48:441 et seq., against Mrs. Maxie Mae Welch Jenkins, the purpose of which is to acquire two strips of land from defendant, Mrs. Jenkins, bordering on the north and south sides of Louisiana Highway 6. The purpose of the taking of these strips by the State is to widen and improve the pre-existing Louisiana Highway 6.
Mrs. Jenkins owns approximately 235 acres of land; 209 acres of which lie on the north side of Louisiana Highway 6 and 23 acres lie on the south side of that same highway. The two strips of land each measures about 35 feet wide and approximately 1700 feet in length on the north side of Highway 6 and 1900 feet in length on the south side of that highwayboth strips totaling 2.762 acres.
Upon the filing of this suit, the State deposited into the registry of the court $1,196.00, which its petition stated was the market value of the two strips of land. Part of this sum, however, was to compensate the defendant for the destruction of certain improvements which lay within the land expropriated.
In due course the defendant answered the petition as prescribed by R.S. 48:451 and requested a trial on the merits as to the amount of compensation for the property taken and for severance damages, totaling $19,900.00.
From a judgment favorable to defendant, the State has effected this devolutive appeal and has urged that the trial judge made the following errors:
1. In accepting testimony of a conclusion that the highest and best use of the tract of land from which the right of way was required was potential subdivision or residential property without requiring a showing or proof of an intention by the owner to utilize the property for such purposes within the not too distant future.
2. In reaching a conclusion that the highest and best use of the subject property was potential subdivision property without there being any evidentiary demonstration of a market or demand for such use of the property, thus rendering such a conclusion speculative and too remote to form the basis for a determination of just compensation, the only testimony of such demand being the unsupported statements, totally unrelated to any *383 factual criteria, of the appraisal witnesses for the property owner.
3. Although accepting the concept that market data or comparable sales are the most reliable indicia of market value, the trial court discarded all comparable sales, notwithstanding that comparable sales in the area were enumerated by witnesses for the plaintiff, and relied on the unsupported opinions and testimony of the witnesses for the property owner who did not utilize any of the recognized appraisal techniques to determine market value or severance damage.
4. In making an award of market value for the land taken on which trees were situated by applying separate values to the land and the trees and combining or adding these separate values for a conclusion of market value rather than making a determination of market value of the land taken as enhanced by the trees situated thereon.
In order to answer the contentions of the appellant, it is necessary to first review the testimony of the expert witnesses and the judgment of the trial court along with his reasons therefor.
The issues before us on this appeal relate only to the plaintiff's awards of market value of the expropriated land and of severance damages to the remainder.
The State produced two appraisers, whose testimony was substantially the same. Mr. Gehr opined that the highest and best use of the defendant's property was as "pasture land and a home site". As such, he estimated the value of the expropriated land at $225.00 per acre, giving a total for 2.762 acres of $622.00. The value of the improvements destroyed he estimated at $575.00, including fencing. The total amount of compensation from these figures came to $1,197.00.
Mr. Terry, the State's other appraiser stated that he believed the highest and best use of that property "At present is cattle form and a rural home site". On this basis, and by using comparable sales, he concluded that the value of the expropriated land was $250.00 per acre, totaling $691.00 for 2.762 acres. He placed a value of $680.00, including fencing, upon the improvements on both strips which were destroyed by the taking. The amount which he computed as just compensation for the land taken totaled $1,371.00.
Both Mr. Gehr and Mr. Terry utilized what they called "comparables" in arriving at the estimated value of the land taken, and they worked together in finding the comparables which they used. Mr. Terry stated that he employed five comparables in reaching his estimate of market value. None of the comparables involved land situated on Highway 6 between Robeline and Natchitoches, and admittedly, three of these comparable sales took place after the date of the expropriation. Of the two sales which took place before the expropriation, both were dated in 1963. The first was of a 120 acre tract of unimproved woodlandtimberlandat a consideration of $70.00 per acre. But Mr. Terry went on to say that this land was situated two miles south of the Jenkins property, did not front on any highway, and, in fact, was inconvenient to reach. The other sale was of a 320-acre tract of land located four miles west of Robeline. That tract of pasture land and woodland had frontage on Louisiana Highway 6, and brought a value of $225.00 per acre.
Mr. Gehr stated that he employed the same comparables as Mr. Terry in appraising the value of the expropriated land. He added, however, that he used another sale which was a 16-acre tract of land just northeast of Many, Louisiana, which sold for $375.00 per acre. (This latter tract was approximately 13 miles southwest of the Jenkins property.)
The two expert witnesses produced by the defendant, Mrs. Jenkins, were Mr. Stephens and Mr. Breedlove. Both of these realtors *384 lived in the area of the Jenkins property and did their business in Natchitoches Parish. Mr. Breedlove stated the best and highest use of the land was for "commercial and/or residential" purposes. He based this opinion upon his general knowledge of land values in the area, and the fact that the Jenkins property lies just northeast of the growing village of Robeline, that is, between Robeline and Natchitoches. He added that his experience in selling real estate in that area (and in contracting to build houses) led him to believe that there was ample demand for that property for home sites or for businesses. Mr. Breedlove said that the make-up of the Jenkins property along Highway 6 handily lent itself to becoming a subdivision of lots with about 104 feet frontage and 208 feet depth. He valued the frontage on the highway at $5.00 per foot. His calculations assessed a value of the southside frontage at $9,350.00, and of the northside frontage at $8,800.00. As to the improvements which were destroyed as a result of the expropriation, Mr. Breedlove estimated a total value of between $2,050.00 and $2,450.00. In addition, he estimated a value of $1,200.00 for the replacement of 3,000 feet of fencing at $.40 per lineal foot.
Defendant's other witness, Mr. Stephens, who believed the highest and best use of the property would be "for residential use", stated that he did not base his conclusions upon comparable sales because there were none along the Natchitoches-Robeline highway. Instead, he based his opinion on his good judgment and broad experience in handling real estate transactions in that general area for 12 years. He testified on cross examination that there was no property between Natchitoches and Robeline which was available for subdivisions, because large lumber companies held most of the property in that area. He remarked that the demand for rural home sites in the form of subdivisions was very high in all the area around Natchitoches, especially along Highway 6, towards Robeline. He further responded that he felt there would be little difficulty in selling such home sites if a subdivision on the Jenkins property were promoted. He added that his experience with sales in that area revealed that others who had promoted suburban home site properties had had little or no difficulty in selling such property to buyers out of Natchitoches, primarily. His professional judgment was that the value of the property in that entire area was rising rapidly and that none of the value rise was attributable to the improvements planned by the State Highway Department along Highway 6.
Mr. Stephens arrived at a lot-value on the south side of Highway 6 totalling $8,400.00. This figure was based upon 14 lots of 125 frontage and 250 feet depth, at $600.00 per lot. He placed the same value on lots that could be staked off on the north side and concluded that there could be 12 lots on the north side totalling a value of $7,200.00. He placed a per acreage value on the front land at $1,500.00 per acre and, as a result, he valued the expropriated property at $4,200.00.
Mr. Stephens estimated the value of the improvements taken at $1,550.00, not counting the fencing.
The trial court noted the great variance between the estimates made on part of the witnesses for the plaintiff and those made on part of the defendant's witnesses. In its difficult position of determining which testimony most nearly approximated the true value of the land, the trial court had to weigh the testimony of each of the expert witnesses and allow the greatest weight to that testimony found to be the soundest.
The trial court recognized the outstanding qualifications of the State's witnesses, Mr. Gehr and Mr. Terry, but took particular note of the fact that Mr. Terry lived in De-Ridder and Mr. Gehr resided and worked in Alexandria. Neither of the State's witnesses were familiar with the area between Natchitoches and Robeline and neither of them had ever made any land sales in that area. Since the plaintiff's expert witnesses were unfamiliar with the nature of the demand *385 and with the values of land in the Robeline-Natchitoches area, the trial court substantially accepted the opinion of the defendant's witnesses as to the highest and best use of the expropriated property and concluded that its highest and best use was as residential or home site property. See State of Louisiana, Through Department of Highways v. Singletary, 185 So.2d 642 (La. App.1st Cir. 1966). See also State of Louisiana, through Department of Highways v. Johnson, 168 So.2d 389 (La.App.3rd Cir. 1964).
The trial judge proved himself to be very familiar with the property in question and with the area in general; furthermore, he knew the defendant's witnesses personally and respected their opinions. As to the method used by the witnesses in computing the value of the land taken, the trial court noted that none of the comparables employed by the plaintiff's witnesses were truly analagous to the area in question in this suit because they were not situated on Highway 6 between Robeline and Natchitoches, where, apparently, the land values were higher than those of other places in that same general area. The trial court may have entertained some doubt that the witnesses produced on the part of the plaintiff met the test of R.S. 48:443, which requires that such witnesses be "familiar with land values in the vicinity of the property to be taken", and thus, gave greater weight to the testimony of defendant's witnesses.
The trial court valued the 2.762 acres of land at $500.00 per acre, plus a $400.00 value for trees destroyed by the expropriation, for a total of $1,781.00. In addition, the trial court allowed $2,350.00 worth of damages to the improvements along the strips of land expropriated. These damages included structures destroyed, repairs necessary to driveway for the residence of Mrs. Jenkins, and fencing which would have to be replaced. (The State has not questioned the award made by the trial court relative to these special damages which resulted from the expropriation.) In addition, the trial court awarded a total of $4,200.00 in severance damages which represented the diminished value of the remainder of the property after the expropriation. The total award by the trial court, therefore, was $8,331.00, subject to the credit of $1,196.00, which represented the amount previously deposited into the registry of the court by the State.
Turning to the specific allegations of error charged against the trial court, the first we shall consider is the charge that while the trial court accepted comparable sales as the most reliable indicia of market value, it nonetheless discarded the comparable sales used by the State's witnesses and relied upon the unsupported opinions of the defendant's experts.
This argument we have already touched on above. It is true that comparable sales have been recognized as the most reliable means of ascertaining market value. See State of Louisiana, Through Department of Highways v. Bjorkgren, 147 So.2d 905 (La.App.1st Cir., 1962). But this does not necessarily mean that testimony of an expert witness which does not rely upon comparable sales in evaluating property must be discarded. See State of Louisiana, through Department of Highways v. Gielen, 184 So.2d 737 (La.App.3rd Cir., 1966).
We cannot say that the trial court erred in relying upon the opinions given by the defendant's witnesses, in spite of the fact that plaintiff's witnesses employed the comparable sales technique in evaluating the expropriated property. In the first place, the comparable sales considered by the State's witnesses are at best but slightly analagous. The defendant's witnesses, Mr. Breedlove, frankly stated he did not find any need to employ the comparable sales technique because he knew of no other sales in that immediate vicinity. He said that since no sales in that area were really comparable to the Jenkins land, he had to rely upon his own judgment as a real estate broker who resided and did business in that immediate area for many years.
*386 Similarly, Mr. Stephens stated that the property fronting along Louisiana Highway 6 is suburban property because of a high demand stemming primarily from prospective buyers from Natchitoches. He further said that he knew of no comparables upon which he could base an estimate of that property other than to use his own good judgment from dealing with suburban development and other sales in that general vicinity.
Since Highway 6 between Robeline and Natchitoches is a main and much-traveled artery, and accepting Mr. Stephens' statement that there is a great demand for suburban property along that segment of Highway 6 (of which demand the State's witnesses knew nothing), the trial court's conclusion that the property expropriated had a value of $500.00 per acre does not appear contrary to the weight of evidence. It was also noted that none of the comparables utilized by the State's witnesses involved any land situated along Louisiana Highway 6 between Robeline and Natchitoches. For these reasons we feel that it was proper for the trial court to give weight to the defendant's witnesses based upon their personal sound judgments and general knowledge of the demand for such property in that vicinity, where the State's witnesses possess no personal knowledge of the land values in that area. See State of Louisiana, through Department of Highways v. Gielen, 184 So.2d 737 (La.App.3rd Cir., 1966); State of Louisiana, through Department of Highways v. DeBlanc, 169 So.2d 399 (La. App.3rd Cir., 1964); State of Louisiana, through Department of Highways v. Dodge, 168 So.2d 430 (La.App.3rd Cir., 1964).
The State strongly contends that the property in question cannot be considered as having as its highest and best use residential or suburban home sites, because Mrs. Jenkins evidenced no design or plan to create a subdivision in the area and there is no showing of any demand for that type of home site. In support of this contention the State relies upon Plaquemines Parish School Board v. Miller, 222 La. 584, 63 So. 2d 6 (1953); Central Louisiana Electric Co., Inc. v. Mire, 140 So.2d 467 (La.App.1st Cir., 1962); Central Louisiana Electric Co., Inc., v. Harang, 131 So.2d 398 (La.App.1st Cir., 1961); Central Louisiana Electric Co., Inc., v. Burns, 131 So.2d 390 (La.App.1st Cir., 1961); State of Louisiana, through Department of Highways v. Boyer, 130 So. 2d 738 (La.App.3rd Cir., 1961), and emphasizes the applicability of Plaquemines Parish School Board v. Miller, 222 La. 584, 63 So.2d 6, 8 (1953). From the Miller case the appellant quotes the following language:
"Whilst the fact that a piece of property may, at some time, become available for residential subdivision purposes, can be taken into consideration in fixing its market value in expropriation proceedings, it should be made to appear that there is some reasonable expectation that it might be so developed in the not too far distant future. It will not do for the owner to say that at some indefinite time it is foreseeable that this property, because it adjoins a growing town, will have an added value as a subdivision project. A situation like that presents only a possibility of such use, and * * * the "possibility" that land to be expropriated might sometime be sought for a particular purpose, was too remote to be considered as an element in determining its value. Here there is no suggestion coming from the defendant that he has ever contemplated dividing any of his property into building lots and spending the money involved in such an enterprise and for the court to arrive at a value on that basis it would be necessary to indulge largely in speculation which, of course, it cannot and will not do." (63 So.2d 6, 8)
Just compensation for land expropriated is said to be the "market value" of that land measured at the time of the expropriation. (See R.S. 48:453.) "Market value" has been said to be determined from computing the "best and highest use" of the property. See e. g., State of Louisiana, *387 Through Department of Highways v. Rapier, 246 La. 150, 164 So.2d 280 (1964). "Market value" has also been stated to be the price which a willing and informed purchaser would pay a willing and informed seller for the land in question under ordinary circumstances. See e. g. State v. Rapier, supra.
The willing seller-willing purchaser fiction requires nothing more than a determination by the trier of fact what that land might reasonably be sold for. Expert, Mr. Breedlove, testified that he did not believe $1,040.00 per acre for land with frontage on Highway 6 was unreasonable. From his experience in handling sales of other lots and other subdivisions around Natchitoches, Mr. Stephens, defendant's other witness, expressed confidence that defendant could get $1,500.00 an acre by selling that land along Highway 6 for residential use.
From this testimony the willing purchaser-willing seller test appears to be satisfied. From this evidence, the trial court placed a value of $500.00 an acre on the property expropriated, which, interestingly, more closely approximates the values given by the State's witnesses than it does those given by the defendant's witnesses.
Applying the alternative test of market value as being the value of the land if put to its "highest and best use", we find much language in decisions seeking to clarify and interpret this test. The results from determining the highest and best use of the property and valuing it accordingly, and the results obtained from arriving at the price a willing purchaser would pay a willing seller for the same property should not differ in the final analysis.
We are in accord with the language of the Supreme Court in the case of State of Louisiana, Through Department of Highways v. Rapier, 246 La. 150, 164 So.2d 280, 282 (1964) which reads as follows:
The Court of Appeal correctly recognized that in an expropriation suit of this nature the proper measure of compensation is the market value of the thing taken, i. e., the price for which the property could be sold by a willing and informed seller to a willing and informed buyer in the condition in which it stood, as well as under the usual circumstances existing, at the time of the expropriation. Further, as it said, market value means the worth of the land considered in the light of its best and highest use, this being the most favorable employment to which the property is adaptable and may reasonably be put in the not too distant future. In this connection the Court of Appeal aptly stated: `* * * Potential residential subdivision or industrial use, to serve as the basis of establishing market value in an expropriation proceeding must be shown to be reasonably prospective, as distinguished from remotely prospective, to remove such potential use of classification from the realm of guesswork, speculation and conjecture. If such potential future use is shown within the reasonably near future, the owner is entitled to compensation on the basis of such use notwithstanding the property is not being utilized for such use at the time of taking. * * *' (Emphasis ours)
As we stated in Gulf States Utilities Co. v. Cormier, 182 So.2d 176 (La.App.3rd Cir., 1966), "It frequently occurs that property has not been and is not being used for the purpose for which it would have the greatest value." (P. 180.)
Similar in nature is language in the case of State of Louisiana, through Department of Highways v. Fontane, 185 So.2d 573, 577 (La.App.1st Cir.,1966), as follows:
We do not believe, however, that under the circumstances presented in this case the use of this land for subdivision purposes is speculative nor is this court inclined to place on the defendant in an expropriation proceeding the burden of *388 proving that he could have sold lots in his proposed subdivision. It is enough to show that the topography, location, size and other factors make the property suitable for a subdivision and that the subdivision is, to use the language of the Harang case, `reasonably prospective, as distinguished from remotely prospective, so as to remove said potential use or classification from the realm of guesswork, speculation and conjecture.'" [Citations omitted.] (Emphasis ours.)
See also, State of Louisiana, through Department of Highways v. Burden, 180 So.2d 784 (La.App.1st Cir.,1965); Florida Gas Transmission v. Woodside, 198 So.2d 716 (La.App.1st Cir.,1967); Louisiana Power and Light Co. v. Ristroph, 200 So.2d 14 (La.App.1st Cir.,1967).
Supported by the above quoted language, it is our view that a property owner is entitled to be paid the market value of the land taken at its prospective highest and best use, where the prospective use is removed from the realm of guesswork or speculation, even though the landowner may, at the time of the expropriation, have no plan to sell the property or to put the property to that particular use.
In the instant case, the testimony of the defendant's witnesses, which the trial court accepted as being based on sound reasoning and great experience of market values in that area, was that the defendant's land adjoining Highway 6 was highly suitable for home sites or subdivision; and, in addition, that there was great demand for such property at that time. It is not just compensation to award a landowner a market value of his land as pasture land when that pasture land is highly suitable for development into home lots or a subdivision; for that land's real value is the value of that use to which it might reasonably be put, which will bring the highest return.
The State strenuously urges that the trial court's inclusion of a separate sum of $400.00 for the value of the trees destroyed as a result of the expropriation was error, because an award for the value of trees cannot be given separate from the land. The appellant contends that the trial court should have valued the trees as part of its evaluation of the expropriated land, since the trees had no commercial value as crops or as timber. See State of Louisiana, Through Department of Highways v. Glassell, 226 La. 988, 77 So.2d 881 (1955); Texas Gas Transmission Corporation v. Broussard, 234 La. 751, 101 So.2d 657 (1958); Texas Gas Transmission Corporation v. Fontenot, 133 So.2d 841 (La.App.3rd Cir.,1961); State of Louisiana, Through Department of Highways v. Burleigh, 160 So.2d 782 (La.App.3rd Cir.,1964); State of Louisiana, Through Department of Highways v. Matise, 170 So.2d 709 (La. App.1st Cir.,1964).
While we agree in general with the State's contention that the value of the trees taken should be considered in the value of the land taken, and not as a separate item, and that the trial court should not have placed an independent value on these trees, this does not preclude an award for severance damages based upon the loss of these trees, if the record substantiates a finding that destruction of the trees caused a reduction in value to the remainder of the land.
The only evidence on this point is given by defendant's witnesses, both of whom testified that destruction of the trees robbed the remainder of some of its attractiveness as home sites, because most prospective buyers desired to have shade trees on their lots. This evidence, we feel, warrants an award of $400.00 as severance damages which resulted from the destruction of the many trees, causing the remaining land to be less attractive as home site property.
The State requests that the severance damages in the amount of $4,200.00 awarded by the trial court be set aside or reduced to a reasonable amount. After a *389 careful reading of its brief, we find but a mention of severance damages in appellant's allegations of errors, and this point is developed only by a general argument. In its argument, the State merely contends that severance damages cannot be awarded upon speculation and that any award must be supported by competent evidence.
Because of the proximity defendant's residence and her rent house would have to the new highway right of way, the trial judge awarded ten percent severance damages to defendant's residence (valued at $7,650.00) or $765.00, and eight percent severance damages to the rent house (valued at $3,100.00) giving a sum of $248.00. These two awards, totaling $1,013.00 are not specifically attacked by the State and are supported by the record. Thus, we affirm these awards.
The trial court also awarded $3,187.00 as severance damages to the remainder due to the decreased depth available for lots after the expropriation.
We do not believe that the record substantiates this award. While there is some testimony that the home site lots might suffer some loss in depth as a result of the expropriation, there is no evidence showing how much depth would be lost, which lot sites would be affected, and especially, what, if any, reduction in the price of the affected lots would be caused thereby. This last award, we feel, must therefore be rejected.
Mrs. Jenkins has answered the appeal and requested this court to increase the total amount awarded her to $13,000.00, which she feels is more in accordance with her expert testimony. From a careful review of the record, we do not feel that the trial court's award was deficient in any particulars; in fact, as shown by our above discussions, the judgment of the trial court was somewhat overly generous.
For the reasons assigned herein the judgment of the district court is amended by reducing the total award from the sum of $8,331.00 to $5,144.00, which award is subject to a credit in favor of the State in the amount of $1,196.00, and as amended, is affirmed. Appellant is to pay all costs of both courts.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.