254 So.2d 98 (1971)
SOUTHWESTERN ELECTRIC POWER CO., Plaintiff-Appellee,
v.
Lewis P. CONGER, Defendant-Appellant.
No. 11687.
Court of Appeal of Louisiana, Second Circuit.
October 12, 1971.
Rehearing Denied November 16, 1971.
Smith, Trichel, Malsch & Ballard, by John R. Ballard, Shreveport, for appellant.
Wilkinson, Woods, Carmody, & Peatross, by Arthur R. Carmody, Jr., Shreveport, Wallace, Bigby & Wallace, by Walter O. Bigby, Bossier City, for appellee.
Before BOLIN, PRICE, and HEARD, JJ.
Rehearing En Banc Denied November 16, 1971.
HEARD, Judge.
This is an expropriation proceeding whereby Southwestern Electric Power Company (hereafter referred to as SWEPCO) seeks to expropriate a 100 foot right of way for a distance of 15,781 feet over the property of Lewis P. Conger, encompassing 36.23 acres. SWEPCO seeks to construct a 69/138 KV electric transmission line from its primary supply point at Dixie, Caddo Parish, Louisiana, to its Red Point Substation near Haughton in Bossier *99 Parish, Louisiana, a distance of 25.37 miles. SWEPCO attempted to negotiate with Conger for the right of way, and failing this, filed suit for the expropriation of the right of way. Conger defended the suit, asserting that there was no need for the new line and in the alternative, there was a better route off of his property, and in the further alternative, there was a better route on his property. The trial judge found that there was a need for the line, that SWEPCO had not abused its discretion in exercising the privilege of expropriation, and that the market value of the land expropriated was $225 per acre. Further, the trial judge found that the right of way did not amount to a full taking, and awarded an allowance of 75% of the market value of the 36.23 acres of land expropriated, or $6,113.81. Defendant Conger appealed.
The need for the proposed transmission line does not seem to be seriously disputed. Conger called no witnesses to dispute this item, whereas, SWEPCO's employees testified convincingly as to the necessity. Robert F. Scott, Louisiana Division Manager of SWEPCO, testified that the proposed line will provide a grid loop system for the eastern part of Bossier Parish which presently is served by a radial line. Scott testified that the problem with a radial line is that a hazard, such as a traffic accident, will black out the entire area. Also, if the line needs servicing, the entire area needs to be blacked out to do so safely. With a loop system it can be serviced without blacking out the entire area. In addition to these safety reasons and black out problems, Scott testified that the grid loop system provides flexibility and the ability to move quantities of power. This is necessary due to the growth in the Bossier Parish area. Robert Watt, System Planning Engineer, testified that the line was needed because of the rapid rate of electrical load growth in the area. Further, he stated that there would be a necessity for a new line in 1974 and the loop would avoid prolonged discontinuance of service. C. H. McDonald, in charge of Design and Construction of Transmission facilities, pointed out that the location of the line with respect to subject property is the most practical and feasible to accomplish the purposes to be achieved and was in accordance with sound engineering practices. Thus, in light of this uncontradicted testimony, we believe the trial judge was correct in his decision that the new line was necessary.
It is the well settled jurisprudence in Louisiana that:
"* * * in the location of rights-of-way considerable discretion is vested in the expropriating authority and the courts will not disturb or interfere with the exercise thereof in the absence of fraud, bad faith or conduct or practices amounting to an abuse of the privilege. * * *" [Central Louisiana Electric Company v. Covington & St. Tammany Land & Improvement Company, La.App., 131 So.2d 369, 375 1st Cir.1961].
Texas Eastern Transmission Corporation v. Bowie Lumber Co., La.App., 176 So.2d 735 (1st Cir.1965), writ refused, 248 La. 385, 178 So.2d 663 (1965); Gulf States Utilities Company v. Heck, La.App., 191 So.2d 761 (1st Cir.1966), writ refused, 249 La. 1021, 192 So.2d 370 (1966); Texas Gas Transmission Corporation v. Pierce, La.App., 192 So.2d 561 (3d Cir.1966); Central Louisiana Electric Company v. Brooks, La.App., 201 So.2d 679 (3d Cir. 1967), writ refused, 251 La. 229, 203 So.2d 558 (1967). Quoting further from Central Louisiana Electric, supra, the court said:
"* * * that availability of other and alternate routes is of no concern to the property owner whose land is sought to be expropriated provided the location selected fulfills the needs and requirements of the expropriator, meets the standards prescribed by sound engineering and economic practices, is neither artibrarily nor capriciously chosen, and does not constitute *100 an abuse of the discretionary right of selection. * * *" [131 So.2d 369, 375, 376]
Louisiana Power and Light Company v. Anderson, La.App., 188 So.2d 733 (2d Cir. 1960); Gulf States Utilities Company v. Heck, supra.
Defendant Conger asserts that there is a better route for the line off of his property but testimony by employees of SWEPCO clearly shows that the line must cross Conger's land due to a proposed future substation in the Swan Lake area near the western part of Conger's land. Scott testified that when building a transmission line, a straight line would be ideal. However, he stated this was not possible in this case because the substation at Swan Lake was part of the proposed grid loop. He states that the "purpose of the Swan Lake substation will be to have a tie line in the future to our Brownlee substation. It's tying together a grid system where you have to fill in these interconnections." He further testified that the proposed point for the substation was chosen to avoid Swan Lake itself and to be approximately across from the Brownlee substation.
C. H. McDonald testified that it would be a waste of line to go south of the proposed substation at Swan Lake, and further that they chose the location of the substation because SWEPCO wanted it near a load center. Having decided that there is a need for the grid system, it would not be fair to force SWEPCO to abandon a link in the system.
Conger further asserts that there is a more feasible route along the northern boundary of his land, but, again, the testimony of SWEPCO's employees shows that they checked out this proposed alternate route and it was not feasible. McDonald testified that SWEPCO determined it was not feasible to traverse Conger's land to the north since they would have to span bayous to build the line. J. C. McLemore, a surveyor, testified that he saw no reason why SWEPCO could not span Willow Chute bayou to the north, but further examination determined that McLemore never surveyed Conger's land and, in fact, had never been on any of the land. It is not enough for Conger to simply point out alternate routes to the court, he must show that SWEPCO abused its discretion, not simply used it. SWEPCO's line comes directly to the proposed substation near Swan Lake and then directly to its ultimate destination. From the testimony it appears that this was certainly not an arbitrary choice and was the most feasible route to accomplish the purposes, present and future, of the line.
There remains the question of compensation to Conger for the 36.23 acres to be expropriated. It is settled law in Louisiana that the value to be placed on property to be expropriated is the market value of that property at the time it is taken. Louisiana Highway Commission v. Davis, 204 La. 624, 16 So.2d 129 (1943); State Department of Highways v. Mouledous, La.App., 200 So.2d 384 (3d Cir.1967), writ refused, 251 La. 36, 202 So.2d 653 (1967). Market value has been defined by Louisiana courts to be what a willing buyer would pay a willing seller at a voluntary sale. Louisiana Power and Light Co. v. Greenwald, La.App., 188 So.2d 618 (2d Cir.1966), writ refused, 249 La. 740, 190 So.2d 243 (1966); Louisiana Power and Light Co., v. Dixon, 201 So.2d 346 (La. App., 2d Cir.1967); Department of Highways v. Mouledous, supra. Of course, the worth of the property should be construed in light of the highest and best use to which the property is adaptable and to which it may reasonably be put in the not too distant future. Gulf States Utilities Company v. Norman, La.App., 183 So.2d 421 (3d Cir.1966) writ refused, 249 La. 118, 185 So.2d 529 (1966).
Walter L. Hunter, realtor, testified he believed the highest and best use of Conger's property was as it was being presently utilized, i.e., agricultural use of the highest elevations and the growing of hardwood timber in the lowland. He stated *101 that 53% of the land was subject to overflow. Conger made a more conservative estimate of 25% to 1/3 of the land being subject to overflow. Frank Grigsby, another realtor, who had been over the property twice, testified that the land could not be used for subdivision development. Lawrence L. May, also a realtor, testified that the land was suitable for small tracts of acreage or for industrial use. J. C. McLemore, surveyor, testified that the land would be suitable for conventional residential homesites with the supporting commercial facilities within one to three years. He felt that at the present time the land was suitable for 2-5 acre tract developments. As can be readily seen, "highest and best use" is subject to many interpretations and is a nebulous guide at best. In State, Department of Highways v. Jenkins, La.App., 207 So.2d 380 (3d Cir.1968) it was succinctly put that:
"The willing seller-willing purchaser fiction requires nothing more than a determination by the trier of fact what that land might reasonably be sold for. * * *" [207 So.2d 380, 387]
It should always be kept in mind that:
"In an expropriation suit it is necessary to arrive at a value which is neither inflated to the prejudice of the expropriating authority nor minimized to an extent which would deny the owner fair, reasonable and just compensation. * * *" [Greater Baton Rouge Consolidated Sewer District v. Nelson, La.App., 144 So. 2d 186, 189 (1st Cir.1962)]
To determine the market value of the property taken in light of the highest and best use to which the property may reasonable be put in the not too distant future, the Louisiana jurisprudence is uniform in holding that the best criterion is evidence as to the price paid in comparable sales, i.e., recent sales of similar property in the vicinity. Gulf States Utilities Company v. Norman, La.App., 183 So.2d 421 (3d Cir.1966), writ refused, 249 La. 118, 185 So.2d 529 (1966); State, Department of Highways v. Jenkins, La.App., 207 So. 2d 380 (3d Cir.1968); State, Department of Highways v. Bjorkgren, La.App., 147 So.2d 905 (1st Cir.1962). The three real estate experts submitted comparable sales to the trial court. In light of these "comparables" Frank Grigsby testified that the market value of Conger's property was $225 per acre; Walter L. Hunter valued it at $200 per acre and Lawrence L. May's valuation was $750 per acre. The discrepancy between the two former appraisals and the latter is due to the "comparables" used. The Conger property is apparently lowland which does not front on a hard-surfaced road. Mr. May's appraisal was based on lands which for the most part fronted on a hard-surfaced road. Mr. May did not take into account that Conger's property was so-called "interior" property. Most of the "comparables" given on truly interior property indicated that $225 per acre is not an unreasonable allowance for this property. The trial judge determined that the expropriation did not amount to a full taking and allowed only 75% of the market value of the land taken for the right of way. This is in line with the jurisprudence, and seems reasonable. Louisiana Power and Light Company v. Greenwald, supra; Texas Gas Transmission Corporation v. Pierce, supra.
For the reasons assigned, the judgment appealed from is affirmed. Costs are to be borne by appellant.