TUCKER, Judge:
This is a suit by Dixie Electric Membership Corporation, a Louisiana non-profit membership corporation, organized under Louisiana Revised Statutes 12:401-430, and engaged in the business of transmitting and distributing electricity for power, lighting, heating, or other such uses, in a number of parishes in the State of Louisiana. Plaintiff Dixie Electric sought to expropriate a hundred foot right-of-way in the northern portion of Livingston Parish for the purpose of a 69KV transmission and distribution servitude to give better service in the Watson to Holden, Louisiana, area.
A description of the proposed installation taken from the testimony of Mr. Floyd Barbay, the consulting electrical engineer who designed the transmission line in question, is given below.
The section of the 69KV transmission line running across the property to be expropriated consists of a single pole type of construction with two crossarms at the top. The basic pole is sixty feet tall. It is southern yellow pine, creosoted. The typical pole has a crossarm at the top which is eight feet long, and which is placed 3.5 feet from the top of the pole. There is a six foot space beneath it, between it and the next cross-arm which is ten feet long. There is a string of four bells which extends along the crossarms to hold three conductors. The wire is about forty feet above the ground, and the poles are about three hundred feet apart. The pole being sixty feet tall and about sixteen inches in diameter at ground level, is buried eight feet in the ground, with the result that it extends about fifty-two feet into the air. There is one conductor on the tip-top of the pole, which is known as the static. The construction of the wire at this point is three-eighths of an inch in diameter, made of high strength steel. Its primary purpose is to drain off any static charges or lightening charges which might hit the line. This line protects the three conductors which are located beneath it, one conductor on the top cross-arm, and two conductors on the bottom crossarm. The wires that carry the “hot electricity,” the phase conductors, are 336-400 MCM aluminum, known as 86SR. They have twenty-six strands of aluminum and seven strands of steel. The minimum clearance of this line is twenty-seven feet, although the code calls for only twenty-one feet in an area accessible to pedestrians.
The suits brought by Dixie Electric to expropriate the surface needed for its servitude were consolidated for trial, and judgment was given for Dixie Electric granting the right of servitude and awarding judgments in favor of the several defendants, in varying amounts, for the surface rights expropriated and for severance damage caused to the remainder. Ten of these defendants have appealed or answered the appeal taken against them by Dixie Electric. The right to expropriate by Dixie Electric was not questioned on appeal. The sole question in each appeal centers around the amount of the award made for the surface rights taken and for various and sundry items of damage.
In the instant suit judgment was awarded against defendant giving Dixie Electric a right-of-way across his property more particularly described as follows:
“A certain parcel or tract of land situated in the northeast quarter (NEj4) of Section 4, Township 6 South, range 4 East, Livingston Parish, Louisiana, more fully described according to that map prepared by Ford, Bacon & Davis Con *322 struction Corporation, Monroe, Louisiana, dated 10/1/71, as follows:
Commence at the northeast corner of Section 4, T-6-S, R-4-E, said point being common to Sections 3, 4, 33 and 34; thence S 89° 47' W along the north section line of Section 4 and the north property line of Melba L. Harvey a distance of 1409.26 feet to a point, and the Point of Beginning; thence continue S 89° 47' W along the north property line and the north line of said Section 4 a distance of 269.47 feet to a point; thence S 68° 26' E 1807.03 feet to a point, said point being on the east line of Section 4 and the east property line of Melba L. Harvey; thence N 0° 09' W. 107.6 feet along the east section line of Section 4 and the east property line of Melba L. Harvey to a point; thence N 68° 26' W, 1516.97 feet to a point, and the Point of Beginning, containing 3.82 acres more or less.”
In an amended judgment deléting an award for timber harvested from defendant’s property, the trial judgment awarded defendant Melba Harvey $2,865.00 as compensation for the expropriation of the right of way; $1,000.00 for severance damages; and taxed as costs to Dixie Electric the fees of defendant’s expert witnesses, Walter C. Snyder, in the amount of $700.00, and Butler Lawrason in the amount of $500.00.
Dixie Electric has appealed devolutively from this judgment, charging as error the awarding of allegedly excessive compensation for the right-of-way expropriated, the awarding of compensation at full fee value, and also the awarding of any severance damages. Defendant has answered the appeal, asking that the compensation for the right of way expropriated be increased to $6,260.00.
Unlike the other defendants in the suits which were consolidated for trial, defendant Melba Harvey used his own expert appraisers and witnesses, Walter C. Snyder and Butler Lawrason. They found that the highest and best use of defendant’s land was for timber and appraised it at $300.00 per acre, stating that it was typical Livingston Parish timber land.
The trial judge did not give any written or oral reasons for judgment, but it is obvious from an arithmetical analysis of the award which he made that he did not use defendant’s own appraisers, nor the plaintiff’s but an abstract figure of $750.-00. Multiplying the 3.82 acres expropriated by $750.00, one arrives at the figure of $2,865.00 which is the award made in the judgment. There is no support in the record for this award. This award will be reduced, therefore, and an award made to defendant, based upon the amount originally offered defendant by Dixie Electric, namely, $333.33 per acre.
 The testimony of expert witnesses for both plaintiff and defendant is most convincing, to the effect that defendant’s remaining land over which the servitude does not traverse will still be useful for the growing of timber. Defendant has testified that the expropriation cuts off his land into a small eight-acre, triangular tract. Since it had no frontage and no access to a road, we do not consider this of any special damage. Nor do we feel the fact that plaintiff’s transmission line will cross a pipeline on this same property of any moment either. There is testimony to the effect that the land would become available for pasturage should any road be extended into that area. Defendant contends that he is not a cattleman, but the fact remains that he retains surface rights to his property which will enable him to use it in any one of a number of ways should he so desire. We think that 80% would be a proper percentage figure to apply in the taking of the right-of-way, as indicated by plaintiff’s appraiser, James C. Carpenter. On this basis of the proportion of the fee value actually expropriated for the servitude, the award for the taking to the defendant Harvey will be reduced to $1,018.00. See United Gas Pipeline Co. v. LeBlanc, 243 So.2d 912 (La.App.3d Cir. 1971) and Southwestern Electric Power Co. v. Conger, 254 So.2d 98 (La.App.2d Cir. 1971)
*323 Neither plaintiffs nor defendant’s witnesses found any severance damage to defendant’s property. There was some testimony to the effect that trees on either side of the right-of-way might have to be topped, or selectively cut; but we feel that this testimony was speculative and unconvincing. It was testified that it would take fifty-five to sixty years to grow another tall stand of timber; so we consider the matter of the interference of plaintiff’s lines with their growth as doubly speculative. Nor was there any proof of the value of defendant’s property before and after the taking as required to justify severance damages. Michigan Wisconsin Pipeline Co. v. Fruge, 227 So.2d 606, 612 (La.App. 3d Cir. 1969), writ refused, 255 La. 149, 151, 229 So.2d 723, 733 (1970).
Although this is one of several consolidated cases which has resulted in a reduction of the awards to the respective defendant landowners, the general rule is that, unless tender of the true value is made before the taking, the expropriating authority should be taxed with reasonable costs of expert witnesses retained by the landowner to help him obtain the just compensation to which he is constitutionally entitled, since to award him a lesser amount would be to deprive him of the full compensation for the taking constitutionally guaranteed him. See State, Through Department of Highways v. Babineaux, 189 So.2d 450, 453 (La.App.3d Cir. 1966) and Dakin and Klein, Eminent Domain, pgs. 325-326. The record in this case is unclear on this score, and it does not establish that a bona fide offer or tender of the true value of the property taken was made to the defendant Harvey by Dixie Electric.
In this case Mr. Harvey employed Walter C. Snyder and Butler Lawrason, both competent and qualified appraisers, to perform the necessary appraisal work. The fees of these experts were fixed by the trial court to Mr. Snyder in the sum of $700.00 and to Mr. Lawrason the sum of $500.00, and such fees were taxed as costs to Dixie Electric.
Considering the time consumed in preparatory appraisal work, the appearances of these expert witnesses in court and the value of the property at stake, we believe that the expert fee of Mr. Snyder should be reduced to the sum of $350.00 and that of Mr. Lawrason should be reduced to the sum of $250.00.
For the reasons assigned the judgment of the trial court awarding. compensation for the true value of the land taken for the servitude is amended by reducing this sum from $2,865.00 to the sum of $1,018.00; the award of severance damages by the trial court is reversed; the expert witness fees of Walter C. Snyder is fixed at the sum of $350.00 and of Butler Lawrason at the sum of $250.00 which amounts are taxed as costs; and in all other respects the judgment is affirmed.
The defendant Harvey is cast with the costs of this appeal; the costs of the trial court are to be borne by the plaintiff.
Judgment affirmed, as amended, in part; reversed in part; and rendered.